T.C. Summary Opinion 2008-128

UNITED STATES TAX COURT

JONATHAN L. HALL, Petitioner <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 11674-06S.          Filed September 22, 2008.

Jonathan L. Hall, pro se.

<u>Jay A. Roberts</u>, for respondent.

PANUTHOS, <u>Chief Special Trial Judge</u>:  This case was heard
pursuant to the provisions of section 7463 of the Internal
Revenue Code in effect at the time the petition was filed.
Pursuant to section 7463(b), the decision to be entered is not
reviewable by any other court, and this opinion shall not be
treated as precedent for any other case.  Unless otherwise

indicated, subsequent section references are to the Internal Revenue Code, as amended.

This case is before the Court on petitioner's request for review of the Internal Revenue Service (IRS) Appeals Office (Appeals) determination to sustain the filing of a Federal tax lien with respect to petitioner's 2000 through 2003 income tax liabilities. After a concession, the issue before the Court is whether respondent abused his discretion in sustaining the lien filing with respect to petitioner's income tax liabilities for taxable years 2001 through 2003.[1]

## Background

Petitioner resided in Virginia when he filed the petition. The parties filed a stipulation of facts and a supplemental stipulation of facts, with attached exhibits. We find those facts and incorporate the stipulations by this reference.

Petitioner worked as a laborer during 2000, 2001, 2002, and 2003 (the years in issue). Petitioner received Forms 1099-MISC, Miscellaneous Income, for each of the years in issue. He reported his earnings and claimed various expenses for each year on Schedule C, Profit or Loss From Business, and he reported a

---

[1] Respondent conceded that the Federal tax lien for 2000 would be withdrawn because the lien was filed reflecting a zero balance owed for 2000. After the filing, the Internal Revenue Service (IRS) assessed a collection fee, interest, and an addition to tax for failure to pay tax reported on a return. At trial respondent's counsel agreed that the IRS would abate the remaining 2000 balance and withdraw the lien for 2000.

self-employment tax liability for each year. Petitioner had no Federal income tax withheld from the payments he received, and he made no estimated tax payments. He filed balance due returns for the years in issue and did not remit payment with those returns.

In 2002 petitioner entered into an installment agreement and made payments toward his outstanding tax liabilities, but he defaulted on the installment agreement in 2005, when he stopped making payments. Respondent filed the notice of Federal tax lien on May 3, 2005, and mailed a Notice of Federal Tax Lien Filing and Your Right to a Hearing Under IRC 6320, dated May 4, 2005, to petitioner. Petitioner timely submitted Form 12153, Request for a Collection Due Process Hearing, and received a date for a telephone hearing. The day before the scheduled hearing, petitioner called the Appeals officer and asked to postpone the hearing for 90 days. The officer refused the delay but allowed petitioner additional time to submit information he wanted considered. Petitioner submitted nothing beyond his initial hearing request, and the officer issued a Notice of Determination Concerning Collection Action(s) Under Section 6320 and/or 6330 (notice of determination), sustaining the lien filing.

Petitioner timely petitioned for judicial review of the notice of determination. In response to motions from respondent, the Court granted a continuance and remanded the case so that Appeals could provide petitioner a face-to-face collection

hearing.  Appeals assigned a different settlement officer (SO) to conduct the hearing on remand.  Before the hearing the SO informed petitioner that Appeals could not consider collection alternatives without:  (1) Proof of his current compliance with Federal income tax obligations, including tax return filing and estimated tax payments; and (2) completed collection information form(s), with supporting documentation.[2]

On April 30, 2007, the SO and his supervisor met with petitioner for several hours.  Petitioner sought withdrawal of the notice of lien on account of hardship and the adverse effect on his credit, and he requested currently noncollectible (CNC) status as a collection alternative.  The SO refused to consider collection alternatives during the meeting because petitioner had not provided proof of compliance or the requested collection information before or at the meeting.

During the collection hearing petitioner asserted that he had been improperly classified as an independent contractor by the people for whom he provided services during the years in

_____

[2] The settlement officer (SO) stated that petitioner was not entitled to challenge the underlying tax liabilities in the collection hearing because he had had a prior opportunity to so challenge; i.e., when he received a notice of intent to levy dated Apr. 16, 2005 (before the May 4, 2005, notice of Federal tax lien filing).  However, the Apr. 16, 2005, levy notice, which is the subject of another case, docket No. 26741-06S, involves petitioner's tax liabilities for tax year 2004 only, not any of the years at issue in this case (2000 through 2003).  In any event, the SO afforded petitioner the opportunity to challenge the underlying tax liabilities at the hearing.

issue.  Petitioner claimed that the alleged employer paid him a lower "employee hourly rate" and not a higher "independent contractor rate".  Petitioner attempted to challenge the underlying tax liabilities solely on the basis that respondent should determine his proper classification.  The SO observed that the outstanding liabilities resulted from petitioner's filing his returns as an independent contractor and discussed petitioner's submitting amended Federal income tax returns for any years petitioner considered himself an employee as well as petitioner's submitting Form SS-8, Determination of Worker Status for Purposes of Federal Employment Taxes and Income Tax Withholding. Petitioner did not provide any documentation to support a challenge to the existence or amounts of the underlying tax liabilities for the years at issue.

Petitioner also argued that the liens should be removed to allow him to obtain credit so he could purchase a computer.  The SO and his supervisor explained that one purpose of the tax liens is to prevent a taxpayer from acquiring additional debt that could compete for funds needed to pay tax liabilities.

The SO allowed petitioner additional time to submit proof of current compliance with his Federal income tax obligations and to provide the collection information required to evaluate collection alternatives.  Using the information petitioner submitted after the hearing, which indicated that petitioner did

not have assets available for collection and did not have positive monthly disposable income, the SO determined that the only collection alternative available was to place petitioner's account in CNC status.

Petitioner did not submit any amended returns or a Form SS-8 to the SO. On September 7, 2007, the SO issued a Supplemental Notice of Determination Concerning Collection Actions Under Section 6320 and/or 6330 (supplemental notice of determination), determining that petitioner's account would be placed in CNC status and that the liens would remain in place.

At trial petitioner sought judicial determination of his classification (employee vs. independent contractor) and removal of the Federal tax liens. Respondent conceded the employment question, agreeing to accept whichever status petitioner preferred.[3]

---

[3] Respondent's counsel indicated that recalculating petitioner's taxes as an employee would result in more taxes due than the amounts reflected in petitioner's original returns filed as an independent contractor; although petitioner would be liable for only one-half of the self-employment taxes if he filed as an employee, he would lose the deductions for one-half of the self-employment taxes and the expenses he originally listed on Schedules C, Profit or Loss From Business, would be reported on Schedules A, Itemized Deductions, where they would be subject to the 2-percent floor imposed by sec. 67 on miscellaneous itemized deductions (here, unreimbursed employee business expenses) and would displace or compete with his standard deduction.

Petitioner refused to stipulate his employment status. The Court instructed petitioner that, without an express agreement by both parties, the issue would be decided on the

(continued...)

## Discussion

In reviewing the Commissioner's decision to sustain collection actions, where the validity of the underlying tax liability is properly at issue, the Court reviews the Commissioner's determination of the underlying tax liability de novo. Sego v. Commissioner, 114 T.C. 604, 610 (2000); Goza v. Commissioner, 114 T.C. 176, 181-182 (2000). The Court reviews any other administrative determination regarding proposed collection actions for abuse of discretion. Sego v. Commissioner, supra at 610; Goza v. Commissioner, supra at 182. An abuse of discretion occurs when the exercise of discretion is without sound basis in fact or law. Murphy v. Commissioner, 125 T.C. 301, 308 (2005), affd. 469 F.3d 27 (1st Cir. 2006). If the Court finds that a taxpayer is liable for deficiencies and additions to tax, then the Commissioner's administrative determination sustaining the collection action will be reviewed for abuse of discretion. See Downing v. Commissioner, 118 T.C. 22, 31 (2002); Godwin v. Commissioner, T.C. Memo. 2003-289, affd. 132 Fed. Appx. 785 (11th Cir. 2005).

Section 6320(c) provides that Appeals' conduct of collection hearings that challenge Federal tax lien filings shall generally be consistent with the procedures set forth in section 6330(c),

---

[3](...continued)
basis of his returns as filed. No oral or written agreement as to petitioner's employment status was made part of the record.

(d), and (e).  At the hearing the Appeals officer is required to verify that "the requirements of any applicable law or administrative procedure have been met."  Sec. 6330(c)(1); see also sec. 6330(c)(3)(A).  The Appeals officer is also required to address whether the proposed collection action balances the need for efficient tax collection with the legitimate concern that any collection action be no more intrusive than necessary.  Sec. 6330(c)(3)(C).  The taxpayer may raise "any relevant issue relating to the unpaid tax or the proposed levy".  Sec. 6330(c)(2)(A).  The taxpayer is also entitled to challenge "the existence or amount of the underlying tax liability" if he "did not receive any statutory notice of deficiency for such tax liability or did not otherwise have an opportunity to dispute such tax liability."  Sec. 6330(c)(2)(B).

Petitioner did not receive a notice of deficiency or otherwise have an opportunity to dispute the underlying tax liabilities before the collection hearings concerning the liens filed for the years at issue.[4]  Therefore, he may challenge the

---

[4] Respondent was not obliged to issue a notice of deficiency to petitioner because the assessments were entered under sec. 6201(a)(1), based on the amounts petitioner reported due on his tax returns, along with statutory interest and additions to tax. Moreover, sec. 6211(a) excludes from the definition of a deficiency the tax that taxpayers report due on their returns. Montgomery v. Commissioner, 122 T.C. 1, 16-17 (2004).  As mentioned supra note 2, the April 2005 levy notice did not address the years at issue in this case and thus did not provide an opportunity to dispute the underlying tax liabilities for 2000

(continued...)

existence or amounts of his underlying tax liabilities for tax years 2000 through 2003.  See <u>Montgomery v. Commissioner</u>, 122 T.C. 1, 7-9 (2004).  Although petitioner repeatedly questioned whether he was properly classified as an independent contractor rather than an employee, he did not challenge the reporting of his income as self-employment income by filing a Form SS-8 or any amended returns with the SO or by submission of evidence at trial.  Thus, while petitioner was entitled to challenge the underlying tax liabilities, he made no such challenge during the administrative collection proceeding or at trial.  The SO did not make any determination as to petitioner's underlying tax liabilities.  Accordingly, the underlying tax liabilities remain as petitioner reported.  With respect to collection alternatives, we review the SO's determination for abuse of discretion.

Petitioner relied upon section 6323(j)(1)(A), (C), and (D) to argue that the liens should be withdrawn.

Section 6323(j)(1)(A) allows for withdrawal of liens that were filed prematurely.  The SO verified that the taxes were properly assessed, that the IRS sent notice and demand for payment to petitioner, and that petitioner defaulted on the 2002 installment agreement.  The liens were not filed prematurely.[5]

---

[4](...continued)
through 2003.

[5] According to the Internal Revenue Manual, pt. 5.16.1.1.4
(continued...)

Petitioner did not submit any evidence showing that withdrawal of the liens would facilitate collection, see sec. 6323(j)(1)(C), or would be in the best interest of petitioner and the United States, see sec. 6323(j)(1)(D). Petitioner argued that removing the liens would enhance his ability to earn income, which would increase his future income subject to tax, increase the amount of tax he would owe and pay in future years, and enable him to make payments on his outstanding liabilities. He provided no support for these contentions. Petitioner introduced evidence that his application for credit to purchase a new computer was denied and asserted that the computer would be helpful in his business. However, petitioner did not show how the computer would lead to increased income or how its lack would keep petitioner from earning a living. Petitioner's assertion that removal of the liens would facilitate collection and would be in the United States' best interest is only conjectural.

---

[5](...continued)
(Sept. 19, 2005), the filing of a Federal tax lien is a requirement of placing petitioner's account in currently noncollectible (CNC) status, which status petitioner had requested from the Automated Collection function. Contrary to petitioner's contentions, IRS records do not reflect that his account was ever placed in CNC status. It appears that petitioner's request for CNC status may have triggered the lien filing, but his challenge to the lien filing prevented the Secretary from applying CNC status until his collection appeal was finally resolved. This case resolves his appeal, and, as mentioned, the Sept. 7, 2007, supplemental notice of determination reflects the SO's determination that petitioner was eligible for CNC status.

Petitioner failed to prove that the liens should be withdrawn pursuant to section 6323(j).

The SO verified that the legal and administrative requirements had been met and considered whether the proposed collection actions properly balanced collection efficiency and intrusiveness.

On the basis of the record, we conclude that respondent satisfied the requirements of section 6330(c) and did not abuse his discretion in sustaining the notice of Federal tax lien for tax years 2001 through 2003.  As discussed supra note 1, respondent has agreed to remove the lien for 2000 and to abate the remaining balance due for that year only.  Respondent's determination as to the liens for 2001 through 2003 is sustained.

To reflect the foregoing,

An appropriate order and decision will be entered.