# United States Court of Appeals
## For the First Circuit

No. 06-1109

EDWARD F. MURPHY,

Petitioner, Appellant,

v.

COMMISSIONER OF INTERNAL REVENUE,

Respondent, Appellee.

APPEAL FROM THE UNITED STATES TAX COURT

[Hon. James S. Halpern, Judge]

Before

Selya and Howard, Circuit Judges,

and Smith,* District Judge.

Timothy J. Burke for appellant.
Rachel I. Wollitzer, Attorney, Tax Division, Department of
Justice, with whom Eileen J. O'Connor, Assistant Attorney General
and Jonathan S. Cohen, Attorney, Tax Division, Department of
Justice, were on brief, for appellee.

November 20, 2006

*Of the District of Rhode Island, sitting by designation.

**HOWARD**, **Circuit Judge**.  Edward F. Murphy owed federal income taxes in excess of $250,000 for 1992-2001.  He offered to settle this liability by paying $10,000.  The Internal Revenue Service (IRS) rejected Murphy's offer, concluding that he could afford a larger settlement payment.  Murphy appealed to the United States Tax Court, which upheld the IRS's ruling.  Murphy now appeals the Tax Court's decision.  We affirm.

## I.

In April 2002, the IRS issued Murphy a notice of intent to levy on his property to collect on his outstanding income tax liability.  Murphy then exercised his right to request a collection due-process hearing (CDP hearing) before the IRS executed the levy.  See 26 U.S.C. § 6330.  In July 2002, the IRS assigned Murphy's case to an appeals officer.

On October 3, 2002, the appeals officer met with Murphy's attorney to begin the hearing.  At this meeting, counsel informed the officer that Murphy did not contest his tax liability but rather would make an "offer-in-compromise" of $10,000 to settle his liability through 2001.  Murphy's offer was based on his claimed inability to pay the full amount owed due to special circumstances.

In response to a request for information about Murphy's special circumstances, counsel told the officer that Murphy was ill but refused to disclose the nature of the illness.  The officer set an October 31, 2002 deadline for Murphy to submit certain

-2-

outstanding documents necessary for considering his offer, including his 2001 tax return. Murphy missed this deadline and several subsequent extensions before finally filing the 2001 tax return on January 8, 2003.

On January 22, 2003, the appeals officer informed counsel that she required additional information from Murphy by February 5, 2003, including verification that Murphy had tendered his estimated tax payment for 2002. Murphy missed this deadline by a week.

A month later, the appeals officer notified counsel that Murphy's offer-in-compromise was insufficient because she calculated that he could make a larger settlement payment in light of his current income and expenses. The letter included a summary of the officer's calculations, and set an April 9, 2003 deadline for Murphy to increase his offer. Counsel subsequently told the officer that Murphy could not make a larger payment and that the calculation was erroneous. The officer granted Murphy ten days to offer a counter-proposal or to demonstrate any error in the calculation. Murphy did not respond by the deadline. A week after the deadline, counsel telephoned the officer to report that Murphy had been hospitalized but again declined to disclose the nature of Murphy's illness. Counsel promised to provide Murphy's counter-proposal by May 9, 2003, but he did not do so.

After Murphy missed the May 9th deadline, the appeals officer determined that Murphy's offer-in-compromise could not be

accepted because it was not commensurate with his ability to pay and because he had missed filing deadlines on multiple occasions. The IRS adopted the appeals officer's recommendation and sent Murphy a letter stating that the agency would proceed to levy on his property.

Murphy appealed this ruling to the Tax Court. The court held an evidentiary hearing during which Murphy unsuccessfully sought to introduce testimony from himself and the appeals officer. In a thorough opinion, the Tax Court ruled that (1) most of the testimony that Murphy sought to offer during the evidentiary hearing was irrelevant,[1] (2) the appeals officer reasonably terminated Murphy's hearing without providing further extensions after Murphy missed several filing deadlines, and (3) the IRS did not abuse its discretion in determining that Murphy's offer-in-compromise was insufficient.

## II.

On appeal, Murphy raises three arguments. First, he claims that the Tax Court abused its discretion in excluding his testimony and the testimony of the appeals officer. Second, he argues that the court erred in determining that the IRS acted reasonably in ending the CDP hearing without providing him with further extensions to submit additional information. Finally, he

---

[1]The court did admit testimony from the appeals officer explaining the meaning of certain notes and symbols that appeared in the record.

contends that the court erred in concluding that the IRS acted within its discretion in rejecting his offer-in-compromise.

Before addressing these arguments, we provide a brief summary of the CDP hearing process and the taxpayer's right to appeal. In 1998, Congress established the CDP hearing process to temper "any harshness caused by allowing the IRS to levy on property without any provision for advance hearing." Olsen v. United States, 414 F.3d 144, 150 (1st Cir. 2005). The hearing is informal: no face-to-face meetings are necessary and there is no requirement that the proceedings be transcribed or recorded. See Living Care Alternatives of Utica, Inc. v. United States, 411 F.3d 621, 624 (6th Cir. 2005). During the hearing, a taxpayer may raise "any relevant issue relating to the unpaid tax or the proposed levy, including . . . offers of collection alternatives, which may include an offer-in-compromise." 26 U.S.C. § 6330(c)(2)(A).

To proceed with a levy after a CDP hearing, the IRS must verify that it has met all the requirements to move forward with a levy, reject the taxpayer's defenses and proposed collection alternatives, and determine that the "proposed collection action balances the need for efficient collection of taxes with the legitimate concern of the person that any collection be no more intrusive than necessary." Id. § 6330(c)(3). An aggrieved

taxpayer may appeal to the Tax Court. Id. § 6330(d)(1) (as amended by Pub. L. No. 109-281, § 855(a)).[2]

### A. Extra-Record Evidence

During the evidentiary hearing before the Tax Court, Murphy testified about the circumstances that made him unable to offer a larger settlement payment, and the appeals officer testified concerning the process that she employed to evaluate Murphy's offer-in-compromise. The IRS objected to the introduction of this testimony on the basis that the Tax Court should not consider evidence that was not part of the administrative record of the CDP hearing. The court rejected this argument but still excluded the evidence as irrelevant. The IRS urges us to affirm this ruling on an alternative ground: Tax Court review should be limited to the administrative record.

We recently considered this issue in the context of a taxpayer appeal to the district court from the denial of an offer-in-compromise made during a CDP hearing. See Olsen, 414 F.3d at 154-57; see also supra n.2. We recognized that the Supreme Court has "consistently stated that review of administrative decisions is 'ordinarily limited to consideration of the decision of the agency . . . and of the evidence on which it was based.'" 415 F.3d at 155

---

[2]Prior to the enactment of Pub. L. No. 109-281, appeals from CDP hearings were heard in federal district court if the Tax Court did not have jurisdiction over the underlying tax liability. See 26 U.S.C. § 6330(d)(1)(B) (repealed by Pub. L. No. 109-281, § 855(a) (2006)).

(quoting United States v. Carlo Bianchi & Co., 373 U.S. 709, 714-15 (1963)). We further observed that this rule applies to judicial review of informal agency adjudications. Id. We therefore held that, subject to limited exceptions, the district court could not consider evidence outside of the administrative record in ruling on a taxpayer's CDP hearing appeal. Id. We did not decide, however, whether the same rule should apply where the taxpayer appeals to the Tax Court. Id. at 154 n.9.

We now conclude that, for the reasons articulated in Olsen, the administrative record rule also applies to a taxpayer's CDP hearing appeal to the Tax Court. See Robinette v. Comm'r, 439 F.3d 455, 461 (8th Cir. 2006) (citing Olsen in support of applying the administrative record rule to CDP hearing appeals in the Tax Court). Our decision to apply the administrative record rule in the context of district court appeals was premised on basic administrative law principles. Olsen, 414 F.3d at 155. The reasons supporting application of the administrative record rule in district court CDP hearing appeals have equal force where the appeal takes place in the Tax Court. The Tax Court, like the district court, is charged with determining whether the IRS's rulings during a CDP hearing were within its discretion. Thus, judicial review normally should be limited to the information that was before the IRS when making the challenged rulings. See Robinette, 439 F.3d at 461.

As mentioned above, there are limited exceptions to the administrative record rule. A reviewing court may accept evidence outside the administrative record where there "is a strong showing of bad faith or improper behavior" by agency decisionmakers, Town of Norfolk v. U.S. Army Corps of Eng'rs, 968 F.2d 1438, 1459 (1st Cir. 1992) (internal citation omitted), or where there is a "failure to explain administrative action [so] as to frustrate effective judicial review," Camp v. Pitts, 411 U.S. 138, 142-43 (1973) (per curiam).

Neither exception applies here. The appeals officer's testimony may have been admissible if the existing administrative record had been inadequate to permit effective judicial review, but the record in this case was clearly sufficient. It included a log of the appeals officer's actions in considering Murphy's offer, contemporaneous notes that the officer made during the hearing, copies of correspondence with Murphy's counsel, and a memorandum outlining the officer's basis for decision. See Robinette, 439 F.3d at 461-62 (concluding that a similarly constituted administrative record was adequate to permit adequate judicial review of a CDP hearing appeal). Murphy's testimony, providing evidence about his financial and health situation that was not presented to the IRS, does not fall within either exception. Accordingly, Murphy's extra-record evidence was properly excluded.

### B.        Conduct of the Hearing

Murphy contends that the IRS abused its discretion in the conduct of his CDP hearing.  He argues that the appeals officer acted "with a clear predisposition toward an inflexible and expeditious determination of . . . the matter" by declining to grant him additional extensions to file more information.

The relevant regulations do not provide a time period within which a CDP hearing must be concluded.  Rather, they instruct the IRS to complete the hearing "as expeditiously as possible under the circumstances."  26 C.F.R. § 301.6330-1(e)(3).  Thus, there is no requirement that an appeals officer "wait a certain amount of time before rendering [a] determination as to a proposed levy."  Clawson v. Comm'r, 87 T.C.M. (CCH) 1251, 2004 WL 870523, at *7 (U.S. Tax Ct. Apr. 23, 2004).  The reasonableness of the appeals officer's decision to terminate a CDP hearing must be determined in light of the entire context of the proceeding.  See Morlino v. Comm'r, 90 T.C.M. (CCH) 168,  2005 WL 2978531 at *6 (U.S. Tax Ct. Aug. 24, 2005).

Murphy's CDP hearing had been ongoing for eight months before the appeals officer concluded it.  During that time, Murphy missed numerous deadlines despite repeated extensions.  To the extent that his failure to meet filing deadlines was caused by illness, he was less than forthcoming with the IRS, as he refused to disclose even the nature of the illness until after the hearing

had ended.

It is apparent that the appeals officer did not conclude the hearing because of an unyielding determination to end the matter quickly, but rather because she reasonably believed that there was little hope that Murphy would timely provide the required information. Were we to find an abuse of discretion on this record, we would transform CDP hearings from a shield against invasive government conduct into a taxpayer's tool to delay the timely collection of delinquent tax liabilities by seeking endless extensions. We will not do so. See, e.g., Carlson v. United States, 394 F. Supp. 2d 321, 329-30 (D. Mass. 2005) (declining to find abuse of discretion where appeals officer declined further extensions after taxpayer missed several deadlines); Manjourides v. Comm'r, 90 T.C.M. (CCH) 396, 2005 WL 2591930, at *3 (U.S. Tax Ct. Oct. 13, 2005) (concluding that there was no abuse of discretion in terminating CDP hearing where taxpayer failed to meet filing deadline).

**C.      Rejection of the Offer-in-Compromise**

Finally, we turn to the IRS's rejection of Murphy's $10,000 offer-in-compromise. We review the Tax Court's decision de novo. See Fargo v. Comm'r, 447 F.3d 706, 709 (9th Cir. 2006). But our review of the underlying IRS decision is deferential. We will only disturb the rejection of Murphy's offer-in-compromise if it represents "a clear abuse of discretion in the sense of clear

-10-

taxpayer abuse and unfairness by the IRS." Olsen, 414 F.3d at 150 (internal citation omitted).

The IRS may compromise a taxpayer's liability where it has a "[d]oubt as to collectability" of the debt. 26 C.F.R. § 301.7122-1(b)(2). A doubt as to collectability exists "in any case where the taxpayer's assets and income are less than the full amount of the liability." Id.

Once a doubt as to collectability is established, the "decision to accept or reject an offer to compromise . . . is left to the discretion of the [IRS]." Id. § 301.7122(c)(1). In exercising this discretion, the IRS must consider all the facts and circumstances of the taxpayer's case, including whether they warrant acceptance of an amount that might not otherwise be acceptable under the IRS's policies and procedures. Id. There is no dispute that Murphy established a doubt as to collectability and therefore was eligible to compromise his debt. The only question is whether the IRS abused its discretion in declining to accept Murphy's proposed compromise.

The IRS may reject an offer-in-compromise because the taxpayer's ability to pay exceeds the compromise proposal. See Fargo, 447 F.3d at 709-10. Under IRS procedures, the agency will not accept a compromise that is less than the reasonable collection value of the case, absent a showing of special circumstances. See Rev. Proc. 2003-71(2). The IRS considers the reasonable collection

-11-

value of a case to be the funds available after the taxpayer meets basic living expenses.  Id.  Murphy argues that the IRS's determination that the reasonable collection value of his case exceeded $10,000 was unreasonable.

Based on information provided by Murphy, the appeals officer calculated that, after expenses, Murphy had a monthly surplus of $1,128.  The officer multiplied this figure by 60 months (a reasonable period until Murphy could expect to retire) for a total of $67,680 in available income.  The officer then added realizable equity to conclude that Murphy could offer to pay $82,164 to settle his tax liability.

Murphy has never mounted a serious challenge to these calculations.  After complaining to the appeals officer that her proposed compromise figure was too high, Murphy never offered an explanation for why the officer's calculations were unreasonable. Even now, Murphy offers only a conclusory allegation that the appeals officer's calculation was "preposterous."  On this record, the IRS did not abuse its discretion in rejecting Murphy's offer-in-compromise.[3]

**Affirmed**.

---

[3]Murphy has not presented a developed argument that the IRS abused its discretion by declining to accept his offer-in-compromise because of special circumstances. See United States v. Zannino, 895 F.2d 1, 17 (1st Cir. 1990).