T.C. Memo. 2010-22

UNITED STATES TAX COURT

REMINGTON P. FAIRLAMB, Petitioner v.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 19122-07L.          Filed February 4, 2010.

Tony Mankus, for petitioner.

Derek W. Kaczmarek, for respondent.

MEMORANDUM FINDINGS OF FACT AND OPINION

THORNTON, Judge:  Pursuant to section 6330(d), petitioner
seeks judicial review of respondent's determination to proceed
with a proposed levy to collect petitioner's unpaid Federal
income tax liabilities for 2002, 2003, and 2004.[1]  The issue for

_____

[1]Unless otherwise indicated, all section references are to
                                        (continued...)

decision is whether respondent abused his discretion in rejecting petitioner's proposed offer-in-compromise.

FINDINGS OF FACT

The parties have stipulated some facts, which we so find. When he petitioned the Court, petitioner resided in Illinois.

Petitioner, born in 1942, has worked for many years as an independent sales representative in the paint industry.  In March 2005 he incorporated his business activities, forming Phoenix Sales & Service, L.L.C. (the LLC), in which he and his wife each owned a 50-percent interest.

Petitioner did not timely file Federal income tax returns for taxable years 1998 through 2004.  After making substitutes for returns, on September 13, 2004, respondent assessed petitioner's income taxes for 1998 through 2001.  On April 9, 2005, respondent sent petitioner notices of intent to levy with respect to his tax years 1998, 1999, 2000, and 2001.  Insofar as the record shows, petitioner submitted no request for a collection due process hearing with respect to these notices.

On or about April 29, 2005, petitioner filed amended Federal income tax returns for the years 1998 through 2002 and original Federal income tax returns for 2003 and 2004.  He did not pay the

---

[1](...continued)
the Internal Revenue Code, and all Rule references are to the Tax Court Rules of Practice and Procedure.  All dollar amounts are rounded to the nearest dollar.

taxes reported on these returns.  On October 6, 2005, respondent sent petitioner a Letter 1058, Final Notice--Notice of Intent to Levy and Notice of Your Right to a Hearing, with regard to petitioner's 2002, 2003, and 2004 income taxes, showing an unpaid balance of $108,486 for these years.[2]  On October 14, 2005, petitioner submitted a timely Form 12153, Request for a Collection Due Process Hearing, on which he indicated that enforcement action would create a hardship on him and that he intended to submit an offer-in-compromise.

Petitioner's First Offer-in-Compromise

On December 29, 2005, respondent received from petitioner Form 656, Offer in Compromise (the first offer), offering to pay $150,000 to compromise his Federal income tax liabilities for taxable years 1998 through 2004, which exceeded $400,000. Petitioner proposed to pay $1,389 per month for 108 months.  This offer indicated that it was based on doubt as to collectibility; i.e., petitioner represented that he had insufficient assets to pay the full amount of his tax liability.  As required, petitioner submitted with the first offer Form 433-A, Collection Information Statement for Wage Earners and Self-Employed

---

[2]In addition to proposing the levy, on Oct. 24, 2005, respondent filed a notice of Federal tax lien with respect to petitioner's tax years 2002, 2003, and 2004.  Petitioner did not file a Form 12153, Request for a Collection Due Process Hearing, in response to this notice of Federal tax lien, and it is not at issue in this proceeding.

Individuals, and Form 433-B, Collection Information Statement for Businesses, with respect to the LLC.

Respondent accepted petitioner's offer-in-compromise for processing. By letter dated April 25, 2006, however, respondent's offer-in-compromise specialist (the first OIC specialist) rejected the proposed terms of the first offer, determining that any acceptable offer should be at least $372,949, calculated as the sum of $18,755 of total net equity in assets and $354,194 of total future income.

By letter dated May 5, 2006, petitioner's counsel took exception to the determinations made by the first OIC specialist. Petitioner's counsel asserted, among other things, that petitioner was elderly and in poor health and planned to retire by age 70 if his health permitted him to work that long. Petitioner's counsel contended that petitioner's future income should be measured by reference to the 59 months that he said remained until petitioner reached age 70.

By letter dated May 11, 2006, the first OIC specialist agreed that petitioner's future income should be measured by the months remaining until he reached age 70 but asserted that the correct number of these remaining months was 69 rather than 59, as petitioner asserted. Using 69 months of future income, the first OIC specialist lowered the minimum acceptable offer to $149,286, an amount that was slightly less than petitioner's

original $150,000 offer.  In a phone call with the first OIC specialist, petitioner's counsel indicated that he agreed with most of the recalculations, except he contended that petitioner's future income should be calculated using 67 months instead of 69 months, because it would take about 2 months to have the offer accepted, and that this adjustment would reduce the offer by about $4,000.

Petitioner's Second Offer-in-Compromise

This position was memorialized in petitioner's amended offer-in-compromise (the second offer), which respondent received on May 22, 2006.  Petitioner offered to pay $145,433 to compromise his Federal income tax liabilities for taxable years 1998 through 2004.  He proposed to pay $16,332 within 30 days of the second offer's acceptance and $1,927 per month for the next 67 months, until he reached age 70.  In a report dated May 24, 2006, the first OIC specialist recommended to her group manager that petitioner's second offer be accepted because it represented "the most that can be expected to be paid by this taxpayer" taking into account "Special circumstance[s] due to the taxpayers [sic] age and health".[3]

_____

[3]The report indicates that petitioner had provided verification from two physicians regarding his health and states that petitioner "has coronary artery disease, hypertension, hyperlipidemia and problems with recurring sinusitis and pneumonia."

On June 22, 2006, a different offer-in-compromise specialist (the second OIC specialist) reviewed the second offer and determined that it should be rejected. By letter dated June 28, 2006, the second OIC specialist informed petitioner that, notwithstanding the contrary recommendation of the first OIC specialist, he would recommend that the second offer not be accepted because "it is not in the best interests of the government". As grounds for this conclusion, the second OIC specialist asserted that petitioner had a long history of not filing and not paying income taxes and had formed the LLC in 2005 to reduce his self-employment taxes. The letter stated that petitioner should make any response within 2 days because the second OIC specialist would be retiring then. By letter dated August 21, 2006, respondent's territory manager formally notified petitioner that the second offer had been rejected because it was determined not to be in the Government's best interests.

In a letter dated September 13, 2006, petitioner's counsel disputed the rejection of the second offer and requested that the case be transferred to respondent's Appeals Office.

Petitioner's Third Offer-in-Compromise

Petitioner's case was assigned to a settlement officer in respondent's Appeals Office. After discussions with petitioner's counsel, the settlement officer indicated by letter dated May 14, 2007, that she had determined petitioner's reasonable collection

potential to be $241,356.  She indicated that she had calculated petitioner's future income assuming that he would work for 60 more months and retire at age 70.  The letter stated that "there are still no guarantees of acceptance since we need the approval of my Territory Manager and Counsel approval."

Petitioner accepted most of the settlement officer's calculations.  On June 12, 2007, respondent received a second amended offer-in-compromise (the third offer) from petitioner that was based on doubt as to collectibility and that proposed to pay $241,356 to compromise his income tax liabilities for taxable years 1998 through 2004.  He proposed to pay $4,023 within 30 days of the third offer's acceptance and $4,023 per month for the next 59 months.

The third time was not a charm.  By letter dated June 20, 2007, the settlement officer informed petitioner that his third offer had not been approved.  Citing provisions of the Internal Revenue Manual (IRM), the letter indicated that petitioner's reasonable collection potential had been recalculated to be $523,958, by projecting his future income over the 107 months asserted to remain in the collection period.  The letter proposed that petitioner's liabilities could be resolved in one of two ways:  (1) By a long-term deferred offer-in-compromise to pay $4,897 for 107 months; or (2) by a part-payment installment agreement, which would require petitioner to liquidate certain

assets and to make monthly payments of $4,053, apparently for 167 months (the 107 months alleged to remain in the collection period plus 5 years), with the possibility that the monthly amount "could be adjusted to a lesser amount when you retire if your income is reduced."

By letter dated July 2, 2007, petitioner's counsel disagreed with the settlement officer's application of the IRM provisions and requested that the settlement officer and her manager reconsider the third offer.

Notice of Determination

On August 6, 2007, respondent issued a Notice of Determination Concerning Collection Action(s) Under Section 6320 and/or 6330, with respect to petitioner's tax years 2002, 2003, and 2004, sustaining the proposed levies for those years (the notice). The notice states in part:

> [T]he Appeals Team Manager confirmed that the offer could not be accepted because the offer was a deferred payment offer which is to be paid over the life of the collection statute. Your offer stipulated a payment term of 59 months (your remaining projected work life until retirement) rather than the 107 months remaining on the collection statute. Consequently, your offer is considered a deferred payment offer **with special circumstances**.
>
> IRM 5.8.11.2(2) states taxpayers can have an offer accepted under Doubt as to Collectibility with special circumstances when their reasonable collection potential is less than their liability, but there are **economic hardship** factors that would justify accepting the offer for an amount less than the reasonable collection potential. **Economic hardship is further defined in IRM 5.8.11.2.(2) as unable to pay reasonable**

**basic living expenses.** Since you are able to meet your basic living expenses, economic hardship does not apply to your situation. Therefore, your offer could not be accepted.

*       *       *       *       *       *       *

Offer Discussion and Analysis

Based on the financial data you provided, you are currently unable to pay the entire liability. Therefore an offer-in-compromise based on doubt as to collectibility would initially appear to be a more appropriate and less intrusive means of collection. However, your offer amount does not equal or exceed your Reasonable Collection Potential (RCP) of $523,988.00. Calculation of your RCP in the amount of $523,958.00 was based on Net Realizable Equity (NRE) in assets totaling $90,287.00 and Future Income Potential (FIP) of 433,671.00. For a long term deferred offer, future income is projected over the life of the collection statute.

OPINION

A.   Collection Procedures

Section 6330 requires the Secretary to furnish a person notice and opportunity for a hearing before making a levy on the person's property. At the hearing, the person may raise any relevant issue relating to the unpaid tax or proposed levy, including spousal defenses, challenges to the appropriateness of the collection action, and offers of collection alternatives. The person may challenge the existence or amount of the underlying tax liability for any period only if the person did not receive a notice of deficiency or did not otherwise have an opportunity to dispute the liability. Sec. 6330(c)(2)(B); Sego v. Commissioner, 114 T.C. 604, 609 (2000). Once the

Commissioner's Appeals Office issues a notice of determination, the person may seek judicial review in this Court. Sec. 6330(d)(1).

Because petitioner has not challenged his underlying liability, our review is for abuse of discretion. Sego v. Commissioner, supra at 610. Under this standard of review, the question is whether respondent's rejection of petitioner's offers-in-compromise was arbitrary, capricious, or without sound basis in fact or law. See, e.g., Murphy v. Commissioner, 125 T.C. 301, 320 (2005), affd. 469 F.3d 27 (1st Cir. 2006). On brief the parties focus primarily on respondent's rejection of the third and final offer as the precipitating event for the notice. We shall do the same.

B. Offers-in-Compromise

Section 7122(a) authorizes the Secretary to compromise any civil or criminal case arising under the internal revenue laws.[4] The regulations set forth three grounds for compromising a liability: (1) Doubt as to liability; (2) doubt as to collectibility; and (3) promotion of effective tax administration. Sec. 301.7122-1(b), Proced. & Admin. Regs.

---

[4]Sec. 6331(k) generally prohibits the IRS from making a levy on a taxpayer's property while an offer-in-compromise is pending with the IRS. An offer-in-compromise becomes pending when it is accepted for processing. Rev. Proc. 2003-71, sec. 5.01, 2003-2 C.B. 517, 518.

Petitioner based each of his three offers-in-compromise on doubt as to collectibility.

For purposes of evaluating an offer-in-compromise, doubt as to collectibility exists "where the taxpayer's assets and income are less than the full amount of the liability."  Sec. 301.7122-1(b)(2), Proced. & Admin. Regs.  An offer-in-compromise based on doubt as to collectibility "will be considered acceptable if it is unlikely that the tax can be collected in full and the offer reasonably reflects the amount the Service could collect through other means * * * This amount is the reasonable collection potential of a case."  Rev. Proc. 2003-71, sec. 4.02(2), 2003-2 C.B. 517, 517.  In some cases, the Commissioner will accept an offer-in-compromise of less than the reasonable collection potential if there are "special circumstances."  Id.

The IRM describes procedures for analyzing a taxpayer's financial condition to determine reasonable collection potential. See IRM pt. 5.8.5 (Sept. 1, 2005).[5]  The IRM defines reasonable collection potential as net equity plus future income.  IRM pt. 5.8.11.2 (Sept. 1, 2005).  "Future income" is defined as "an estimate of the taxpayers [sic] ability to pay based on an analysis of gross income, less necessary living expenses, for a specific number of months into the future."  IRM pt. 5.8.5.5(1).

---

[5]The parties have stipulated the relevant provisions of the Internal Revenue Manual (IRM) referenced in this opinion.

For a deferred payment offer, the general rule is that future income should be projected for "the number of months remaining on the statutory period for collection." Id. The IRM also instructs the offer-in-compromise examiner to "Consider the taxpayers [sic] overall general situation including such facts as age, health, marital status, number and age of dependents, highest education or occupational training, and work experience." IRM pt. 5.8.5.5(3). More specifically, the IRM states: "Some situations may warrant placing a different value on future income than current or past income indicates". IRM pt. 5.8.5.5(5). By way of illustration, the IRM states that if "A taxpayer is elderly, in poor health, or both and the ability to continue working is questionable", then the offer-in-compromise examiner should "Adjust the amount or number of payments to the expected earnings during the appropriate number of months. Consider special circumstance situations when making any adjustments". Id.

The IRM also describes procedures for processing offers-in-compromise in the Commissioner's Appeals Office. See IRM pt. 8.23.3 (Oct. 16, 2007). It states: "IRM 5.8 is the primary authority for evaluating offers and should be followed when evaluating an appealed rejection. Appeals does not have the authority to disregard established guidance." IRM pt. 8.23.3.3(1).

C.    Analysis of Respondent's Determination

Respondent's settlement officer followed the just-cited IRM directives in initially recommending that petitioner's third offer be accepted.  In determining petitioner's reasonable collection potential, she projected his future income for 60 months, which she noted was his "remaining working life until 70".  She noted in her case activity report:

> Determination is made to recommend the offer for acceptance.  Tp [taxpayer] owns no realty and only has minimal personal assets.  His most important asset is his income as an independent paint sales manufacturing representative.  This income is the source that will fund the offer of $241,356.00.  Distraint action against this income could be a possibility but would not provide any more funds into the Treasury than is provided via monthly payments of $4,022.60 via the offer.  Also continued levy could result in tp's dismissal.  If the taxpayer maintains the offer, he will liquidate the back taxes and remain compliant with current taxes as well.  Tp is now 65 years old.  The older he becomes, the less likely the Service is to collect the liability or enforce collection.

Ultimately, the settlement officer was overruled by her superiors, and petitioner's third offer was rejected.  The reasons articulated in the notice are somewhat cryptic.  The notice cites IRM pt. 5.8.11.2(2) for the proposition that "[t]axpayers can have an offer accepted under Doubt as to Collectibility with special circumstances when their reasonable collection potential is less than their liability, but there are economic hardship factors that would justify accepting the offer for an amount less than the reasonable collection potential."

Applying this standard, the notice concludes that petitioner did not qualify for an offer-in-compromise based on doubt as to collectibility with special circumstances because "you are able to meet your basic living expenses".

This rationale is deficient for at least two reasons. First, the notice misstates IRM pt. 5.8.11.2(2), which states that an offer-in-compromise based on doubt as to collectibility with special circumstances may be accepted where there are "economic hardship or public policy/equity factors that would justify accepting the offer". (Emphasis added.) More fundamentally, according to the IRM an offer-in-compromise is to be evaluated as based on doubt as to collectibility with special circumstances (as opposed to plain-vanilla doubt as to collectibility) only if it is "for an amount less than the reasonable collection potential". Id.

Petitioner's third offer was for the exact amount that the settlement officer had initially calculated to be his reasonable collection potential. Addressing this issue obliquely, the notice states (without citation of authority): "For a long term deferred offer, future income is projected over the life of the collection statute." The notice fails to take into account, however, IRM pt. 5.8.5.5(5), which, as previously discussed, directs that in computing a taxpayer's future income, adjustments should be made for a taxpayer who is elderly or in poor health

and whose ability to continue working is questionable.  Following this directive, the settlement officer initially calculated petitioner's future income under the assumption that he would work until age 70.  There is no indication in the record that any determination was ever made that petitioner would be able to work beyond age 70.  Rather, the record strongly suggests that the determination in the notice was based on a misapplication of the IRM directives.

The Commissioner's internal procedures, as reflected in the IRM, do not have the force of law, and deviation from them does not necessarily render the Commissioner's action invalid. Vallone v. Commissioner, 88 T.C. 794, 807-808 (1987). Nevertheless, the determination in this case, which was based wholly on misapplication of internal procedures, cannot be said to have a sound basis in law or fact.

On brief respondent argues that the offer-in-compromise was properly rejected because of petitioner's alleged "long history of non-compliance and his affirmative tax avoidance actions".[6]  In making this argument, respondent cites section 301.7122-1(b)(3)(iii), Proced. & Admin. Regs., which provides:  "No compromise to promote effective tax administration may be entered into if compromise of the liability would undermine compliance by

---

[6]Petitioner contests these assertions as unfounded in the record.

taxpayers with the tax laws." (Emphasis added.) Because petitioner's various offers were all based on doubt as to collectibility rather than effective tax administration, this regulatory provision is not, by its terms, applicable.[7] In any event, we do not believe that respondent's ultimate determination, as explained in the notice, can fairly be construed as predicated on this rationale. In initially recommending petitioner's third offer, the settlement officer expressed no concern about this issue, and there is no indication in the record that this consideration played any role in the decision to overturn the settlement officer's initial recommendation.

In the light of the inadequacy of the reasons given in the notice for rejecting petitioner's third offer, which the settlement officer, with seemingly more soundly reasoned analysis, had initially recommended accepting, we are unable to conclude whether it was an abuse of discretion for respondent to determine to proceed with the proposed collection action for petitioner's 2002, 2003, and 2004 tax liabilities. We will

---

[7]In Oman v. Commissioner, T.C. Memo. 2006-231, this Court found that IRS directives as contained in IRM pt. 5.8.7.6(5) (Nov. 15, 2004) and policy statement P-5-100 (Jan. 30, 1992) were inconsistent as to whether doubt as to future compliance is a sufficient reason to reject an offer-in compromise. The Court remanded for further consideration and clarification the Commissioner's determination rejecting on this ground the taxpayer's proposed offer-in-compromise based on doubt as to collectibility.

remand the case to respondent's Appeals Office for further

consideration and clarification and to allow petitioner, if he

wishes, to propose a new collection alternative.

D.    Evidentiary Issues

At trial the Court received into evidence a number of

petitioner's exhibits over respondent's objection that they are

outside the administrative record.  On similar grounds respondent

objected to petitioner's testimony and, in a motion in limine, to

the testimony of petitioner's witness, a business associate.  On

brief respondent has renewed his objections.

Petitioner suggests that the disputed documents should be

considered part of the administrative record because most of them

are IRS documents and the others were sent to petitioner by the

IRS.[8]  Petitioner complains that respondent evinces a double

standard in that, while insisting that judicial review should be

limited to the administrative record, respondent seeks to raise

in these proceedings for the first time issues and arguments that

---

[8]Evaluation of the parties' competing claims in this regard is complicated by the fact that respondent has not offered into evidence a certified copy of the entire administrative record. Although the parties have stipulated numerous documents that might properly appear in an administrative record, they have not filed with the Court the entire administrative record, stipulated as to its genuineness.  Cf. Rule 217 (describing procedures for disposing of a declaratory judgment action on the administrative record).  From the absence of certain documents cross-referenced in the stipulated exhibits, it is apparent that the entire administrative record is not in evidence.

were never raised in the administrative hearings.[9]  Petitioner states on brief:  "The Petitioner cannot help but further wonder whether Respondent's strenuous efforts to limit the judicial review to the administrative file is not an effort to generally hamstring the tax courts and the taxpayers in order to avoid having its procedural missteps brought to light."

The Tax Court does not follow the administrative record rule.  See <u>Robinette v. Commissioner</u>, 123 T.C. 85 (2004), revd. 439 F.3d 455 (8th Cir. 2006).  In any event, in reaching our decision we have not relied upon any of the disputed documents or their contents or any of the trial testimony.  The portions of the record as to which respondent has raised no objection are sufficient to sustain our decision.

To reflect the foregoing,

<u>An appropriate order</u>

<u>will be issued</u>.

---

[9]For instance, on brief respondent disputes whether petitioner's health would necessitate his retirement by age 70. Insofar as the record shows, however, respondent's officers who examined petitioner's offers-in-compromise were satisfied with the documentary evidence petitioner submitted in this regard, and the notice of determination does not suggest that this issue played any role in the ultimate rejection of petitioner's offer-in-compromise.