T.C. Memo. 2017-60

UNITED STATES TAX COURT

DENISE LLOYD, Petitioner <u>v.</u>
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 17559-15L.　　　　　　　　Filed April 10, 2017.

<u>Charles A. Ray, Jr.</u>, for petitioner.

<u>Rachel L. Rollins</u>, for respondent.

MEMORANDUM OPINION

LAUBER, <u>Judge</u>:  In this collection due process (CDP) case, petitioner

seeks review pursuant to section 6330(d)(1)[1] of the determination by the Internal

---

[1]All statutory references are to the Internal Revenue Code (Code) in effect at all relevant times, and all Rule references are to the Tax Court Rules of Practice and Procedure.  We round all monetary amounts to the nearest dollar.

[*2] Revenue Service (IRS or respondent) to uphold a notice of intent to levy. The IRS served the levy notice to assist in collecting unpaid trust fund recovery penalties (TFRPs) from petitioner for 10 calendar quarters during 2010-2012. The sole issue for decision is whether the IRS settlement officer abused his discretion in declining to accept a $3,000 offer-in-compromise (OIC). Respondent has moved for summary judgment on this question, and we will grant his motion.

## Background

The following facts are based on the parties' pleadings, respondent's motion, and petitioner's opposition, including the attached affidavits and exhibits. Petitioner resided in Maryland when she filed her petition.

Petitioner was the sole shareholder of D.H. Lloyd & Associates, Inc. (D.H. Lloyd), a District of Columbia corporation engaged in the commercial insurance brokerage business. D.H. Lloyd became delinquent on its employment tax liabilities for the 10 quarters in question. The IRS subsequently assessed TFRPs against petitioner under section 6672, having determined that she was a "responsible person" required to collect, account for, and pay over the withheld employment taxes. The aggregate amount of the assessed penalties is approximately $100,000.

[*3] On May 12, 2014, in an effort to collect these unpaid liabilities, the IRS sent petitioner a Letter 1058, Final Notice of Intent to Levy and Notice of Your Right to a Hearing. Petitioner timely requested a CDP hearing, indicating that she sought a collection alternative in the form of an installment agreement. She did not indicate an intention to challenge her underlying liability for any quarter in question.

After receiving petitioner's case on July 18, 2014, a settlement officer (SO) from the IRS Appeals Office reviewed her administrative file and confirmed that the penalties in question had been properly assessed and that all other requirements of applicable law and administrative procedure had been met. The SO scheduled a telephone CDP hearing for August 22, 2014. He informed petitioner that, in order for him to consider a collection alternative, she needed to supply a completed Form 433-A, Collection Information Statement for Wage Earners and Self-Employed Individuals, and a Form 656, Offer in Compromise, with supporting financial information.

Petitioner submitted a Form 656 on which she sought an OIC based on doubt as to collectibility, offering to pay $3,000 to compromise her outstanding liabilities for the 10 quarters in question. She included a Form 433-A showing monthly income of $16,621, monthly expenses of $16,847, assets of $980,000, and

[*4] liabilities of $922,854.  Her expenses included housing expenses of $6,964 per month and vehicle ownership expenses of $1,617 per month.  The latter included a $1,200 monthly lease payment for a 2012 model Lexus.

A telephone CDP hearing was held with petitioner's representative on August 22, 2014.  During that call the SO advised that petitioner's offer would be forwarded to the IRS OIC processing unit (unit) for evaluation.  On March 30, 2015, the unit returned the OIC with a recommendation that it be rejected because it was less than petitioner's "reasonable collection potential" (RCP), which the unit calculated to be $175,035.  It determined this RCP solely on the basis of petitioner's net income, excluding from its calculations her assets and liabilities.  The unit determined that her reported monthly expenses, particularly for housing and vehicle expenses, exceeded the applicable local standards by more than $1,000 per month.  Employing the local standard amounts, the unit concluded that petitioner could pay a total of $175,035 during the remainder of the collection limitations period.

After receiving the unit's response the SO wrote petitioner's representative to schedule another telephone call.  During that call the SO explained that petitioner's actual housing and vehicle expenses significantly exceeded the IRS local standards.  Her representative then requested a deviation from these standards.

[*5] With respect to housing expenses, petitioner contended that her primary residence was an essential business asset because she sometimes worked from home and that the IRS should allow a household size of four for purposes of computing housing costs. With respect to the vehicle expenses, she contended that her work as an insurance broker necessitated a high-quality vehicle.

The SO rejected these contentions. He concluded that petitioner's house was not an essential business asset because she could work from other locations and that her household size was properly set at two on the basis of her last-filed Federal income tax return.[2] And he concluded that petitioner's work did not require use of any specialized vehicle. The SO accordingly rejected petitioner's request for a deviation from IRS local standards.

The SO informed petitioner that he could consider a six-year installment agreement of $1,545 per month. Petitioner rejected this offer. The SO accordingly closed the case and, on June 10, 2015, issued petitioner a notice of determination sustaining the proposed levy for the 10 quarters in question.

---

[2]Petitioner also contended that the mortgage on her house was "underwater." However, her Form 433-A indicated that the house had a fair market value (FMV) of $960,000 and encumbrances of only $810,854; the mortgage could be regarded as "underwater" only if the FMV were reduced by 20% to produce an estimate of a "quick sale" price. In any event, the SO concluded that the value of the house was immaterial because it was not being considered an asset in the RCP calculation.

**[\*6]** Petitioner timely petitioned this Court for review of the notice of determination. On October 13, 2016, respondent filed a motion for summary judgment, to which petitioner timely replied.

Discussion

The purpose of summary judgment is to expedite litigation and avoid costly, time-consuming, and unnecessary trials. Fla. Peach Corp. v. Commissioner, 90 T.C. 678, 681 (1988). Under Rule 121(b), the Court may grant summary judgment when there is no genuine dispute as to any material fact and a decision may be rendered as a matter of law. Sundstrand Corp. v. Commissioner, 98 T.C. 518, 520 (1992), aff'd, 17 F.3d 965 (7th Cir. 1994). In deciding whether to grant summary judgment, we construe factual materials and inferences drawn from them in the light most favorable to the nonmoving party. Ibid. However, the nonmoving party may not rest upon the mere allegations or denials of her pleadings but instead must set forth specific facts showing that there is a genuine dispute for trial. Rule 121(d); see Sundstrand Corp., 98 T.C. at 520. We find that no material facts are in dispute and that this case is appropriate for summary adjudication.

**[*7]** Where (as here) there is no challenge to the amounts of the taxpayer's underlying liabilities for the quarters in question,[3] we review the IRS determination for abuse of discretion. Goza v. Commissioner, 114 T.C. 176, 181-182 (2000). Abuse of discretion exists when a determination is arbitrary, capricious, or without sound basis in fact or law. See Murphy v. Commissioner, 125 T.C. 301, 320 (2005), aff'd, 469 F.3d 27 (1st Cir. 2006). In deciding whether the SO abused his discretion in sustaining the levy, we review the record to determine whether he: (1) properly verified that the requirements of applicable law or administrative procedure have been met; (2) considered any relevant issues petitioner raised; and (3) considered "whether any proposed collection action balances the need for the effi-

---

[3]Petitioner did not challenge her liability for the TFRPs during the CDP hearing or in her petition to this Court. She is thus precluded from challenging those liabilities here. See Rule 331(b)(4) ("Any issue not raised in the assignments of error shall be deemed to be conceded."); Thompson v. Commissioner, 140 T.C. 173, 178 (2013) ("A taxpayer is precluded from disputing the underlying liability if it was not properly raised in the CDP hearing."); sec. 301.6330-1(f)(2), Q&A-F3, Proced. & Admin. Regs. Petitioner likewise did not allege during the CDP hearing, in her petition, or in her response to the motion for summary judgment that the TFRPs, which are assessable penalties, were not "personally approved (in writing) by the immediate supervisor of the individual making * * * [the penalty determination]." Sec. 6751(b)(1). That issue is therefore deemed conceded. See Rule 331(b)(4) ("Any issue not raised in the assignments of error shall be deemed to be conceded."); Triola v. Commissioner, T.C. Memo. 2014-166, 108 T.C.M. (CCH) 185, 187; Dinino v. Commissioner, T.C. Memo. 2009-284.

**[\*8]** cient collection of taxes with the legitimate concern of \* \* \* [petitioner] that any collection action be no more intrusive than necessary." <u>See</u> sec. 6330(c)(3).

Section 7122(a) authorizes the IRS to compromise an outstanding tax liability. The regulations set forth three grounds for such compromise: (1) doubt as to liability; (2) doubt as to collectibility; or (3) promotion of effective tax administration. Sec. 301.7122-1, Proced. & Admin. Regs. Petitioner based her OIC on doubt as to collectibility.

The Secretary may compromise a tax liability on the basis of doubt as to collectibility where the taxpayer's assets and income render full collection unlikely. <u>Id.</u> para. (b)(2). Conversely, the IRS may reject an OIC when the taxpayer's RCP exceeds the amount she proposes to pay. <u>See</u> <u>Johnson v. Commissioner</u>, 136 T.C. 475, 486 (2011), <u>aff'd</u>, 502 F. App'x 1 (D.C. Cir. 2013). Generally, Appeals officers are directed to reject offers substantially below the taxpayer's RCP unless "special circumstances" justify acceptance of such an offer. <u>See</u> <u>Fairlamb v. Commissioner</u>, T.C. Memo. 2010-22; Rev. Proc. 2003-71, sec. 4.02(2), 2003-2 C.B. 517, 517.

We do not independently assess the reasonableness of the taxpayer's proposed offer. Rather, our review is limited to ascertaining whether the decision to reject her offer was arbitrary, capricious, or without sound basis in fact or law.

[*9] Murphy, 125 T.C. at 320. We do not substitute our judgment for the settlement officer's as to the acceptability of any particular offer. See, e.g., Johnson, 136 T.C. at 488.

The SO determined petitioner's RCP on the basis of her monthly income of $16,621 less allowable expenses. In calculating allowable housing and vehicle expenses, he used the IRS local standard amounts, which were significantly lower than petitioner's actual expenses. Petitioner concedes as much; her sole contention is that she was entitled to a deviation from those standards.

The Code provides that the IRS shall create and publish schedules of "national and local allowances" to ensure that taxpayers entering into OICs have adequate means to provide for basic living expenses. Sec. 7122(d)(1) and (2)(A). This Court has upheld the IRS' use of published local standards to determine basic living expenses in the context of evaluating collection alternatives. See, e.g., Speltz v. Commissioner, 124 T.C. 165, 179 (2005), aff'd, 454 F.3d 782 (8th Cir. 2006). Allowable housing and vehicle expenses are those that are "necessary to provide for a taxpayer's and his or her family's health and welfare and/or production of income." Internal Revenue Manual (IRM) pt. 5.15.1.7(1) (Oct. 2, 2012).

Ordinarily, settlement officers are directed to allow the taxpayer the lesser of the local standards or the amounts actually paid monthly for housing and vehi-

[*10] cle expenses. See IRM pt. 5.15.1.9 (Nov. 17, 2014); IRM pt. 5.15.1.7(4) (Oct. 2, 2012). Only if the local standards are "inadequate to provide for a specific taxpayer's basic living expenses" should the SO allow a deviation. IRM pt. 5.15.1.7(5). The taxpayer bears the burden of providing sufficient information to the SO to justify deviation from local standards. See Thomas v. Commissioner, T.C. Memo. 2015-182.

With respect to her monthly housing expenses of $6,964, petitioner contends that her primary residence was integral to her business and that her housing expenses should have been calculated for a four-person rather than a two-person household. On the first point the SO noted that petitioner's business reported rental expenses for two distinct office locations. He reasonably concluded that, while she sometimes worked from home, her ability to work from those locations meant that her residence was not an essential business asset.

The SO rejected petitioner's claim for a larger household size because she had reported only two people in her household on her last-filed return, which was for tax year 2013. See IRM pt. 5.15.1.9(1). Petitioner contends that the SO should have based his household size determination on her 2014 return, which showed four household members. But she requested an extension of time, until October 15, 2015, to file her 2014 return, and the SO issued the notice of deter-

[*11] mination on June 10, 2015, four months before that return was due. It was not an abuse of discretion for the SO to base his determination on petitioner's 2013 return, which was her most recently filed return at the time the SO made his determination.[4]

With respect to vehicle expenses, petitioner contends that she needed her Lexus for work purposes and that $1,617 of the reported monthly expenses, including a lease payment of $1,200, should be allowed. The SO reasonably rejected this contention and limited petitioner to the standard vehicle allowance. He found that she had not shown a "special vehicle requirement" for her work and that a less expensive vehicle would have been perfectly suitable. IRM pt. 5.8.5.22.3 (Sept. 30, 2013).

The SO did not act arbitrarily or capriciously in determining that petitioner's RCP greatly exceeded her $3,000 offer. He reasonably rejected her request for a deviation from the local standards because she failed to demonstrate that they were inadequate to provide for her basic living expenses. He reasonably determined that petitioner had no "special circumstances" that would warrant accept-

---

[4]Even if an increase to petitioner's household size were warranted, the SO noted that he would then have to factor into his calculations the income of her nonliable spouse, which might have increased her RCP substantially.

[*12] ance of an offer substantially below her RCP.[5] Instead he offered petitioner

a six-year installment agreement of $1,545 per month, which she rejected. Finding

no abuse of discretion in any respect, we will sustain the proposed collection

action.

To reflect the foregoing,

An appropriate order and decision

will be entered.

---

[5]Special circumstances that may warrant acceptance of an OIC where the RCP is more than the offer amount include: (1) facts demonstrating that the tax-payer would suffer "economic hardship" if the IRS were to collect from her an amount equal to the RCP and (2) compelling public policy or equity considera-tions that provide sufficient basis for compromise. See Murphy, 125 T.C. at 309; McClanahan v. Commissioner, T.C. Memo. 2008-161; IRM pt. 5.8.4.2(4) (May 10, 2013).