T.C. Memo. 2018-77

UNITED STATES TAX COURT

JOSEPH C. GALLAGHER, Petitioner <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 18928-16L.                    Filed June 6, 2018.

Joseph C. Gallagher, pro se.

<u>Kirsten E. Brimer</u> and <u>Daniel C. Munce</u>, for respondent.

MEMORANDUM OPINION

LAUBER, <u>Judge</u>:  In this collection due process (CDP) case, petitioner

seeks review pursuant to section 6330(d)(1)[1] of the determination by the Internal

_____

[1]All statutory references are to the Internal Revenue Code in effect at all rel-
evant times, and all Rule references are to the Tax Court Rules of Practice and
Procedure.  We round all monetary amounts to the nearest dollar.

**[*2]** Revenue Service (IRS or respondent) to uphold two notices of intent to levy. The IRS issued the notices in an effort to collect trust fund recovery penalties (TFRPs) assessed against petitioner for six calendar quarters during 2010-2011. The sole issue for decision is whether the IRS settlement officer (SO) abused her discretion in declining to accept a $104,478 offer-in-compromise (OIC). Respondent has moved for summary judgment on this question, and we will grant his motion.

Background

The following facts are based on the parties' pleadings, respondent's motion, and petitioner's opposition, including the attached affidavits and exhibits. Petitioner resided in New Jersey when he filed his petition.

Petitioner was the sole shareholder of Tabor Acoustical, Inc. (Tabor), a New Jersey corporation that encountered financial difficulties. It became delinquent on its employment tax liabilities for the six quarters in question. The IRS assessed TFRPs against petitioner under section 6672, having determined that he was a "responsible person" required to collect and pay over the withheld employment taxes. The aggregate amount of the assessed penalties exceeds $800,000.

On June 12, 2013, in an effort to collect these unpaid liabilities, the IRS sent petitioner two Letters 1058, Final Notice of Intent to Levy and Notice of Your

[*3] Right to a Hearing.[2]  Petitioner timely requested a CDP hearing, stating that he sought a collection alternative.  He did not indicate an intention to challenge his underlying liability for any quarter in question.

After receiving petitioner's case an SO from the IRS Appeals Office confirmed that the TFRPs had been properly assessed and that all other requirements of applicable law and administrative procedure had been met.  During the ensuing year, the CDP hearing was put on hold to enable the SO to determine whether petitioner's account should be placed into currently not collectible status and to enable petitioner to try to sell his principal residence.

The SO scheduled a telephone CDP hearing for September 25, 2014.  She informed petitioner that, in order for her to consider a collection alternative, he needed to supply a Form 433-A, Collection Information Statement for Wage Earners and Self-Employed Individuals, supporting financial information, a copy of his 2012 tax return, and proof of estimated tax payments for 2014.  On September 8, 2014, petitioner submitted all of the requested information.

During the CDP hearing petitioner expressed interest in an OIC, and on October 17, 2014, he submitted a Form 656, Offer in Compromise.  After reviewing

---

[2]One letter listed an unpaid income tax liability for 2011.  That liability has since been paid in full and is not at issue here.

**[\*4]** this offer the SO informed petitioner that it was probably not processable. See Internal Revenue Manual (IRM) pt. 8.23.3.1.1.1 (Oct. 15, 2014) (listing failure to submit "required initial payment" as a basis for rejecting OIC). Petitioner then decided to submit a 24-month OIC that would not require a 20% down payment.

In December 2014 petitioner submitted a revised Form 656 in which he offered to make installment payments for 24 months for a total of $56,000. That offer was transmitted to the IRS office in Plantation, Florida, for evaluation. In mid-2015 petitioner received a Form 2751, Proposed Assessment of Trust Fund Recovery Penalty, proposing additional TFRP assessments for certain calendar quarters in 2012 and 2014.

In February 2016 petitioner's OIC was assigned to a new offer specialist in Jacksonville, Florida, who asked him to submit additional financial information and completed income tax returns for 2014 and 2015. Petitioner provided some of the requested documentation in April 2016. After reviewing all of petitioner's financial information, the offer specialist in May 2016 informed the SO that she recommended rejection of petitioner's proposed OIC because his "reasonable collection potential" (RCP) was $847,326, far exceeding his offer of $56,000.

**[\*5]**  The SO afforded petitioner an opportunity to dispute the specialist's computations.  In June 2016 he submitted additional financial information and contended that the specialist had miscalculated his net realizable equity in assets.  The SO agreed and reduced his net equity in assets from $800,000 to $193,745; she determined the lower value by reducing the value of certain rental properties and by eliminating half the value of the assets petitioner held jointly with his wife.  The SO further determined that petitioner's share of future household disposable income was $37,912, after subtracting his wife's share of their income and expenses.  Taking all of this into account, the SO determined that petitioner's RCP was $231,657 ($193,745 + $37,912).

In July 2016 the SO informed petitioner that his $56,000 offer would be rejected because it was substantially below his recalculated RCP.  Petitioner then submitted another OIC, offering to pay $104,478 to compromise his TFRP liabilities for 2012 and 2014 as well as for 2010 and 2011.  On August 8, 2016, the SO informed petitioner that his new OIC would be rejected because it remained substantially below his recalculated RCP.  She allowed petitioner to submit another offer, but he chose not to do so.

**[\*6]**  On August 19, 2016, the SO closed the case and issued petitioner a notice of determination sustaining the proposed levies.[3]  Petitioner timely petitioned this Court for review of the notice of determination.  In July 2017 respondent filed a motion for summary judgment, which petitioner timely opposed.

On February 13, 2018, the Court issued an order directing respondent to file a response addressing the application of section 6751(b)(1) to the TFRPs in question in light of this Court's Opinion in <u>Graev v. Commissioner</u>, 149 T.C. __ (Dec. 20, 2017), <u>supplementing and overruling in part</u> 147 T.C. 460 (2016).  Respondent filed a response attaching a declaration from counsel and a Form 4183, Recommendation re:  Trust Fund Recovery Penalty Assessment.  This form shows that the initial determination of the TFRPs by Revenue Officer (RO) Naidas was approved in writing by Group Manager Corcoran, whose signature is typed on the form.

---

[3]Because of an apparent typographical error, the notice of determination states that petitioner's RCP was $213,657.  The documentation in the administrative record shows that his recalculated RCP was $231,657.  <u>See</u> <u>Andre v. Commissioner</u>, 127 T.C. 68, 74-75 (2006) (holding that IRS was not bound by apparent typographical error in notice of determination).

**[\*7]**                                    Discussion

I.     Summary Judgment Standard and Standard of Review

The purpose of summary judgment is to expedite litigation and avoid costly, time-consuming, and unnecessary trials. Fla. Peach Corp. v. Commissioner, 90 T.C. 678, 681 (1988). Under Rule 121(b), the Court may grant summary judgment when there is no genuine dispute as to any material fact and a decision may be rendered as a matter of law. Sundstrand Corp. v. Commissioner, 98 T.C. 518, 520 (1992), aff'd, 17 F.3d 965 (7th Cir. 1994). In deciding whether to grant summary judgment, we construe factual materials and inferences drawn from them in the light most favorable to the nonmoving party. Ibid. However, the nonmoving party may not rest upon the mere allegations or denials of his pleadings but instead must set forth specific facts showing that there is a genuine dispute for trial. Rule 121(d); see Sundstrand Corp., 98 T.C. at 520. We find that no material facts are in dispute and that this case may appropriately be adjudicated summarily.

Where (as here) there is no challenge to the amounts of the taxpayer's underlying liabilities,[4] we review the IRS determination for abuse of discretion.

---

[4]Petitioner did not challenge his liability for the TFRPs during the CDP hearing or in his petition. He is thus precluded from challenging those liabilities here. See Rule 331(b)(4) ("Any issue not raised in the assignments of error shall be deemed to be conceded."); Thompson v. Commissioner, 140 T.C. 173, 178

(continued...)

**[*8]** <u>Goza v. Commissioner</u>, 114 T.C. 176, 181-182 (2000). Abuse of discretion exists when a determination is arbitrary, capricious, or without sound basis in fact or law. See <u>Murphy v. Commissioner</u>, 125 T.C. 301, 320 (2005), <u>aff'd</u>, 469 F.3d 27 (1st Cir. 2006).

II.    <u>Analysis</u>

In deciding whether the SO abused her discretion in sustaining the proposed levies, we review the record to determine whether she: (1) properly verified that the requirements of applicable law or administrative procedure had been met; (2) considered any relevant issues petitioner raised; and (3) considered "whether any proposed collection action balances the need for the efficient collection of taxes with the legitimate concern of * * * [petitioner] that any collection action be no more intrusive than necessary." See sec. 6330(c)(3).

Section 7122(a) authorizes the IRS to compromise an outstanding tax liability on grounds that include doubt as to collectibility, the ground that petitioner urged. See sec. 301.7122-1, Proced. & Admin. Regs. The Secretary may compromise a tax liability on this basis where the taxpayer's assets and income render full

---

⁴(...continued)
(2013) ("A taxpayer is precluded from disputing the underlying liability if it was not properly raised in the CDP hearing."); sec. 301.6330-1(f)(2), Q&A-F3, Proced. & Admin. Regs.

**[*9]** collection unlikely.  Id. para. (b)(2).  Conversely, the IRS may reject an OIC when the taxpayer's RCP exceeds the amount he proposes to pay.  See Johnson v. Commissioner, 136 T.C. 475, 486 (2011), aff'd, 502 F. App'x 1 (D.C. Cir. 2013). Generally, Appeals officers are directed to reject any offer substantially below the taxpayer's RCP unless special circumstances justify acceptance of such an offer. See Fairlamb v. Commissioner, T.C. Memo. 2010-22; Rev. Proc. 2003-71, sec. 4.02(2), 2003-2 C.B. 517, 517.

We do not independently assess the reasonableness of the taxpayer's proposed offer.  Rather, our review is limited to ascertaining whether the decision to reject his offer was arbitrary, capricious, or without sound basis in fact or law. Murphy, 125 T.C. at 320.  We do not substitute our judgment for the SO's as to the acceptability of any particular offer.  See, e.g., Johnson, 136 T.C. at 488.

Petitioner first contends that the SO erred in declining to consider his TFRP liabilities for 2012 and 2014.  Those liabilities were not properly before the Appeals Office because the IRS had not yet sent petitioner a collection notice advising him of his hearing rights for those periods.  See Kraft v. Commissioner, 142 T.C. 259, 265 (2014).  In any event, the IRS had not issued petitioner, at the time he filed his petition, a notice of determination for 2012 or 2014.  We thus lack jurisdiction to consider them.  See, e.g., Pietanza v. Commissioner, 92 T.C. 729,

**[*10]** 735 (1989), aff'd, 935 F.2d 1282 (3d Cir. 1991); Pyo v. Commissioner, 83 T.C. 626, 632 (1984); Anson v. Commissioner, T.C. Memo. 2010-119, 99 T.C.M. (CCH) 1504, 1506.[5]

Petitioner next contends that the SO miscalculated his RCP. He does not dispute the SO's determination that his share of future household disposable income was $37,912. Rather, he focuses on the SO's recalculation of his net equity in assets. Employing the customary "quick sale" methodology, see IRM pt. 5.15.1.20 (Oct. 2, 2012), the SO calculated petitioner's asset equity as $387,489, then reduced this amount by 50% because his wife, a non-liable party, had a 50% ownership interest in the assets. Combining asset equity of $193,745 with future income of $37,912, the SO determined that petitioner's RCP was $231,657.[6]

---

[5]We do have jurisdiction to review an SO's rejection of an OIC that encompasses liabilities for both CDP years and non-CDP years. See, e.g., Sullivan v. Commissioner, T.C. Memo. 2009-4. Indeed, that is precisely the situation here: the SO considered petitioner's TFRP liabilities for 2012 and 2014, as well as his TFRP liabilities (exceeding $800,000) for the 2010 and 2011 CDP years, in evaluating his global OIC of $104,478. We clearly have jurisdiction to consider (and in the text we do consider) whether the SO abused his discretion in rejecting that offer. What we lack jurisdiction to do is to consider any challenge to petitioner's underlying tax liabilities for the non-CDP years.

[6]Petitioner asserts that the SO erred in failing to adjust his RCP to account for the fact that his wife is a non-liable spouse. As explained in the text, the SO fully accounted for that fact.

[*11] Petitioner contends that the SO overvalued one of his business assets, an LLC that held various rental properties. According to petitioner, the SO should have assigned zero asset value to this LLC because it was an asset "used for the production of income." See IRM pt. 5.8.5.15 (Sept. 30, 2013). If an SO determines that an asset is necessary for the production of income, "it may be appropriate to adjust the income or expense calculation * * * to account for the loss of income stream if the asset were either liquidated or used as collateral to secure a loan." Id. pt. 5.15.1.22 (Oct. 2, 2012). But the IRM advises SOs to make no adjustment to income, and to include the asset equity in the taxpayer's RCP, if the asset is not producing income. Ibid.; see id. pt. 5.8.5.15(2) (Sept. 30, 2013).

On the Form 433-A that petitioner submitted to the SO, the only income he reported consisted of pension and Social Security payments. He reported no income associated with the LLC mentioned above. The SO therefore did not abuse her discretion in including the equity value of that LLC in her RCP calculation.

Petitioner also contends that the IRS abused its discretion by taking too long to evaluate his offers. Petitioner submitted multiple OICs, which were considered by multiple IRS officials in multiple IRS locations. Although this process was protracted, petitioner has not identified any prejudice that he suffered, apart from "a great deal of stress and disruption" for himself and his family. Stress and dis-

**[*12]** ruption often accompany tax controversies and do not justify setting aside otherwise appropriate IRS collection actions.

"Absent a showing of special circumstances, Appeals officers are directed to reject offers substantially below the taxpayer's RCP where the OIC is premised on doubt as to collectibility." Clifford v. Commissioner, T.C. Memo. 2014-248, 108 T.C.M. (CCH) 597, 598.  Petitioner's final offer of $104,478 was substantially below his RCP of $231,657.  The SO did not abuse her discretion in rejecting that offer.[7]

Section 6330(c)(1) and (3)(A) required the SO to verify that all applicable legal and administrative requirements had been met.  One potentially applicable requirement is that imposed by section 6751(b)(1), which provides:  "No penalty under this title shall be assessed unless the initial determination of such assessment is personally approved (in writing) by the immediate supervisor of the individual making such determination or such higher level official as the Secretary may designate."

---

[7]Petitioner contends that the IRS misapplied refunds from 2012 and 2014 to a TFRP liability for 2009.  Neither petitioner's 2009 TFRP liability nor his refunds for 2012 or 2014 are currently before us.  Regardless, section 6402(a) allows the IRS to credit an overpayment against any liability owed by a taxpayer.  See Savage v. Commissioner, 112 T.C. 46 (1999); Boyd v. Commissioner, T.C. Memo. 2000-16.

**[\*13]** In <u>Blackburn v. Commissioner</u>, 150 T.C. __ (Apr. 5, 2018), the IRS argued that section 6751(b) does not apply to TFRPS at all. We found no need to decide that question because the record included a Form 4183 reflecting supervisory approval of the TFRPs in question. We determined that the Form 4183 was sufficient to enable the SO to verify that the requirements of section 6751(b)(1) had been met with respect to the TFRPs, assuming the IRS had to meet those requirements in the first place.

Here, respondent submitted a declaration that attached a Form 4183 showing that the TFRPs assessed against petitioner had been approved in writing by Group Manager Corcoran, the immediate supervisor of RO Naidas. In <u>Blackburn</u>, we held that an actual signature is not required; the form need only show that the TFRPs were approved by the RO's supervisor. Accordingly, we find there to be a sufficient record of prior approval of the TFRPs in question.

To reflect the foregoing,

<u>An appropriate order and decision</u>

<u>will be entered for respondent</u>.