T.C. Memo. 2015-14

UNITED STATES TAX COURT

MARK E. GARBER AND LORI A. GARBER, Petitioners v.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 13595-11L.                    Filed January 21, 2015.

Mark E. Garber and Lori A. Garber, pro sese.

John R. Bampfield, for respondent.

MEMORANDUM FINDINGS OF FACT AND OPINION

RUWE, Judge:  Pursuant to section 6330(d)(1),[1] petitioners seek review of

respondent's determination to proceed with collection by levy of their unpaid 2005

_____

[1]Unless otherwise indicated, all section references are to the Internal
Revenue Code in effect at all relevant times.

[*2] Federal income tax liability.  Petitioners do not contest the existence or amount of their underlying tax liability for 2005, and the only issue for decision is whether respondent abused his discretion by sustaining the proposed levy action.

As a preliminary matter, at the close of trial on June 11, 2012, the Court ordered briefs but also suggested that the parties confer and discuss the possibility of settlement.[2]  In respondent's posttrial brief he stated that he asked for and received additional financial information from petitioners and forwarded it to the IRS Collection Division for consideration and that "[o]nce a determination regarding the installment agreement has been made, respondent will file a status report with the Court."  On September 8, 2014, the Court ordered the parties to file status reports apprising the Court as to whether a determination regarding an installment agreement had been reached.  On September 23, 2014, respondent filed a status report informing the Court that petitioners provided updated financial information on August 13, 2012, and that the Collection Division ultimately determined that petitioners qualified for currently not collectible status for all periods for which they owed a balance.  On August 21, 2013, respondent sent a proposed decision to petitioners that would have resolved this case.  Petitioners

_____

[2]The Court did not remand the case to the Internal Revenue Service (IRS) Appeals Office (Appeals) for further consideration to make a supplemental determination.

[*3] did not respond. Petitioners have not filed a status report in response to our order of September 8, 2014. Given petitioners' lack of response, the Court has no choice but to consider this case on the existing record.

## FINDINGS OF FACT

Some of the facts have been stipulated and are so found. The stipulation of facts and the attached exhibits are incorporated herein by this reference.

At the time the petition in this case was filed, petitioners resided in Tennessee.

On May 15, 2006, respondent received petitioners' 2005 joint Federal income tax return. On the return petitioners reported an income tax liability of $15,636 and withholding of $10,212.[3] Petitioners do not contest their 2005 tax liability.

On March 13, 2010, respondent issued to petitioners a Letter 1058, Final Notice of Intent to Levy and Notice of Your Right to a Hearing, with respect to petitioners' 2005 tax year. On April 5, 2010, petitioners timely mailed to respondent Form 12153, Request for a Collection Due Process or Equivalent Hearing, requesting a collection due process (CDP) hearing for their 2003, 2004,

---

[3]Other than offset refunds from other tax periods petitioners have made no payments toward their 2005 tax liability. As of April 27, 2010, petitioners' 2005 income tax liability was $4,551.28.

**[*4]** 2005, and 2006 tax years and indicating a desire to enter into an offer-in-compromise. Petitioners reiterated their desire to enter into an offer-in-compromise because of insufficient income and "chronic health conditions coupled with the inability to acquire health insurance".

Respondent's settlement officer determined that petitioners' request for a CDP hearing concerning tax years 2003, 2004, and 2006 was premature because no collection notices with respect to those periods had been issued to petitioners.[4] Mr. Garber failed to file income tax returns for 2003, 2004, and 2006, and respondent filed substitutes for returns (SFRs) for these years in accordance with his authority to do so under section 6020(b). Although not explicitly stated in the record, it appears that only Mr. Garber has tax liabilities for 2003, 2004, and 2006. As of July 28, 2010, Mr. Garber had estimated accrued balances for 2003, 2004, and 2006 of $23,322.52, $21,789.79, and $13,875.30, respectively.

On July 27, 2010, petitioners sent to respondent's settlement officer a facsimile with copies of petitioners' joint Form 656, Offer in Compromise (joint OIC), concerning their 2005 tax year. In the joint OIC petitioners offered to

_____

[4]The case activity record relied on by respondent indicates that respondent's settlement officer determined that a CDP hearing request for tax years 2004, 2005, and 2006 was premature. The inclusion of tax year 2005 as premature appears to be in error, as the Letter 1058 was issued with respect to petitioners' 2005 tax year.

[*5] satisfy their 2005 tax liability for $2,500, consisting of an initial payment of $208.33 and 11 subsequent monthly installments of $208.23.[5] Petitioners' proposed offer-in-compromise was based on effective tax administration. In a letter accompanying the joint OIC petitioners indicated that the application fee and the first payment would be "going out in tomorrow's mail." Petitioners also provided Form 656-A, Income Certification for Offer in Compromise Application Fee and Payment, indicating a total monthly household income of $3,664. In addition, petitioners submitted a Form 433-A, Collection Information Statement for Wage Earners and Self-Employed Individuals, reporting: (1) total monthly income of $3,664; (2) total monthly expenses of $2,669; and (3) net equity in assets totaling $52,944. Respondent's settlement officer transferred petitioners' joint OIC to respondent's Centralized Offer in Compromise Unit (COIC) for consideration.

On November 10, 2010, respondent's COIC sent petitioners a letter requesting, inter alia, that they submit an amended OIC that included all periods for which there is a balance. Respondent enclosed two amended OICs: one for

_____

[5]We note that these payments total $2,498.86.

[*6] Mrs. Garber's 2005 tax year[6] and one for Mr. Garber's 2003, 2004, 2005, and 2006 tax years.

On January 26, 2011, respondent's COIC mailed another letter, requesting that petitioners file their 2009 income tax return and, for the second time, that petitioners submit an amended OIC including all periods for which there was a balance. The January 26, 2011, letter further advised petitioners that they did not qualify for an OIC application fee waiver and that they had not made any of the required proposed deferred periodic payments. In addition COIC informed petitioners that the failure to pay the application fee and make the periodic payments would result in the automatic withdrawal of their offer. COIC also reminded petitioners that the next periodic payment was due January 28, 2011.

In late February 2011 respondent's COIC received two amended OICs.[7] The amended OIC for Mr. Garber: (1) included tax years 2003, 2004, 2005, and 2006 and (2) proposed to pay $6,624.40, consisting of a deferred periodic payment offer of $96.20 and, beginning August 28, payments of $96.15 for a term of 63

---

[6]Respondent asserts that, as of February 23, 2011, Mrs. Garber had a balance of $4,701.10 for her 2005 tax year. According to respondent, this is the only year for which Mrs. Garber has a tax liability.

[7]The amended OICs were signed by both petitioners on February 16, 2011.

[*7] months.[8]  Mrs. Garber's amended OIC was identical in all respects to Mr. Garber's, except it included only her 2005 tax year.  Both petitioners' offers were proposed on the basis of effective tax administration.

On March 11, 2011, COIC mailed to petitioners a letter indicating that petitioners' failure to make the subsequent installment payments as agreed to in their OICs had resulted in COIC considering their offers withdrawn and that the matter was being referred back to Appeals for a final determination.  On March 25, 2011, respondent's settlement officer sent petitioners a letter stating:

> Your Offer in Compromise was received back from the Centralized Offer in Compromise unit with a recommendation to return them to you due to failure to make required monthly payments per 2 Form 656s submitted.  Payments need to be made for each offer as stipulated on the offer form terms.  No payments have been received for Mrs. Garber's offer and Mr. Garber's offer payments are 3 months behind.

The letter further advised petitioners that if they wished to continue processing their amended OICs, all past due payments needed to be brought current within 14 days from the date of the letter.

On April 5, 2011, respondent's settlement officer spoke with Mr. Garber regarding the March 25, 2011, letter.  During the telephone call respondent's

---

[8]We note that these payments total $6,153.65.  Petitioners do not explain this discrepancy.

[*8] settlement officer advised Mr. Garber that he would calculate an installment agreement amount and discuss it with him on April 6, 2011. On April 11 and 19, 2011, respondent's settlement officer and Mr. Garber discussed petitioners' qualification for at least a $424-per-month installment agreement and the possibility of petitioners filing tax returns for the periods for which SFRs had been prepared (i.e., 2003, 2004, and 2006). According to respondent's settlement officer, as of May 3, 2011, amended returns had not been received for the SFR tax periods.

On May 11, 2011, respondent issued to petitioners individually Notices of Determination Concerning Collection Action(s) Under Section 6320 and/or 6330 (notice of determination) sustaining the proposed levy for their 2005 tax year.[9] The notice of determination advised petitioners that their OICs could not be considered because of "failure to make periodic payments during the offer processing."

Petitioners timely filed a petition with the Tax Court.

---

[9]On May 11, 2011, respondent mailed to Mr. Garber and Mrs. Garber separate notices of determination for 2005. These notices of determination were substantively identical.

**[*9]**                              OPINION

Petitioners invoke our jurisdiction under section 6330(d) to review the notice of determination issued to them by respondent with respect to the proposed levy on their property.  Petitioners contend in part that the notice of determination is "based upon a fundamental inaccuracy".  Specifically, petitioners contend that Mr. Garber did not promise to file amended tax returns, as recommended by respondent's settlement officer, for tax years for which SFRs had been prepared (i.e., 2003, 2004, and 2006).  Respondent contends that, although the settlement officer discussed the possibility of potentially reducing Mr. Garber's liabilities by amended tax returns, the decision to sustain the proposed collection action was not based on Mr. Garber's failure to submit such returns.  Respondent further contends that Appeals did not abuse its discretion in rejecting petitioners' offers-in-compromise because petitioners failed to make the periodic payments as required under section 7122 while their offers were being considered.  Moreover, respondent contends that petitioners did not qualify for an effective tax administration offer because they would not suffer economic hardship by paying their tax liabilities and they failed to demonstrate that public policy or equity considerations favored compromise.

**[\*10]** Section 6330(a)(1) provides that the Secretary may not levy on any property or right to property of a person unless the Secretary first notifies the person in writing of the right to a hearing before Appeals.  The Appeals officer must verify at the hearing that the requirements of any applicable law or administrative procedure have been met.  Sec. 6330(c)(1).  At the hearing the person may raise any relevant issue relating to the unpaid tax or the proposed levy, including appropriate spousal defenses, challenges to the appropriateness of the collection action, and collection alternatives.  Sec. 6330(c)(2)(A).  The person is entitled to raise issues regarding the underlying tax liability "if the person did not receive any statutory notice of deficiency for such tax liability".  Sec. 6330(c)(2)(B).  Taxpayers are expected to provide all relevant information requested by Appeals, including financial statements, for its consideration of the facts and issues involved in the hearing.  Sec. 301.6330-1(e)(1), Proced. & Admin. Regs.  Following the CDP hearing the Appeals officer will determine whether proceeding with the proposed levy is appropriate and issue a notice of determination.  Sec. 6330(c)(3); Offiler v. Commissioner, 114 T.C. 492, 498 (2000).

Petitioners did not dispute their underlying tax liability for 2005.  Where, as here, a taxpayer's underlying liability is not in dispute, the Court reviews the Appeals officer's determination for abuse of discretion.  See Sego v.

**[\*11]** <u>Commissioner</u>, 114 T.C. 604, 610 (2000); <u>Goza v. Commissioner</u>, 114 T.C. 176, 181-182 (2000). Under the abuse of discretion standard, we decide whether the determination of the Appeals officer was arbitrary, capricious, or without a sound basis in fact or law. <u>Murphy v. Commissioner</u>, 125 T.C. 301, 308, 320 (2005), <u>aff'd</u>, 469 F.3d 27 (1st Cir. 2006).

Section 7122(a) authorizes the Secretary to compromise a taxpayer's outstanding income tax liability. In general, the decision to accept or reject an offer, as well as the terms and conditions agreed to, are left to the discretion of the Commissioner. Sec. 301.7122-1(a)(1), (c)(1), Proced. & Admin. Regs. When a taxpayer submits a periodic payment offer, the offer-in-compromise "shall be accompanied by the payment of the amount of the first proposed installment." Sec. 7122(c)(1)(B)(i). Any failure to make an installment (other than the first installment) due under the offer-in-compromise during the period the offer is being evaluated by the Secretary may be treated by the Secretary as a withdrawal of the offer-in-compromise. Sec. 7122(c)(1)(B)(ii). Regulations under section 7122 clarify the procedure required with respect to an offer-in-compromise. Sec. 301.7122-1(d), Proced. & Admin. Regs.

On at least two separate occasions while this case was before Appeals, petitioners were advised that the failure to make the required periodic payments

[*12] during the consideration of their proposed offers-in-compromise would result in the automatic withdrawal of their offers. Petitioners' joint OIC was sent (via facsimile) to respondent's settlement officer on July 27, 2010, proposing to satisfy their tax liability by making periodic installment payments, as opposed to a lump-sum payment. In the letter petitioners indicated that the application fee and the first payment for their offer-in-compromise would be mailed the following day. In response, respondent's Centralized Offer in Compromise Unit mailed to petitioners a letter dated January 26, 2011, advising petitioners that they had not made any required periodic payments and that the failure to do so would result in the automatic withdrawal of their proposed offer.

On February 22 or 23, 2011, respondent's COIC received Mr. Garber's and Mrs. Garber's amended OICs. Both of these amended OICs proposed to satisfy each of their tax liabilities by making periodic payments. On March 25, 2011, respondent's settlement officer mailed to petitioners a letter advising that "[n]o payments have been received for Mrs. Garber's offer and Mr. Garber's offer payments are 3 months behind." Respondent's settlement officer informed petitioners that if they wished to continue pursuing their offers all payments need to be received within 14 days of the letter; otherwise the offers would be returned.

[*13] Respondent contacted petitioners twice by mail, both times advising them to become current on their periodic payments. By not making the required periodic payments during the consideration of their offers, petitioners did not comply with the provisions of section 7122. We conclude that petitioners' continued payment noncompliance was permissibly treated by respondent as a withdrawal by petitioners of their offers-in-compromise.

The grounds for the compromise of a tax liability are: (1) doubt as to liability; (2) doubt as to collectibility; and (3) promotion of effective tax administration. Sec. 301.7122-1(b), Proced. & Admin. Regs. Petitioners proposed both their joint OIC and amended OICs on the basis of effective tax administration.

The Commissioner may compromise a tax liability to promote effective tax administration when: (1) collection of the full liability will create economic hardship or (2) if there are compelling public policy or equity considerations. Sec. 301.7122-1(b)(3), Proced. & Admin. Regs.

Petitioners did not assert that the payment in full of their tax liabilities will leave them unable to pay their basic living expenses. On July 27, 2010, petitioners sent (via facsimile) to the settlement officer a Form 433-A showing $995 of monthly discretionary income and net equity in assets of $52,944. Despite

**[\*14]** showing sufficient financial resources on their Form 433-A, petitioners speculate that they may encounter future financial challenges in the form of employment layoffs, economic downturns, and medical conditions. However, petitioners did not demonstrate that their financial situation would leave them unable to pay their tax liabilities and pay basic living expenses. In addition, petitioners did not claim that borrowing against the equity in their property interests would render them unable to afford basic living expenses. Accordingly, petitioners did not show that the payment in full of their tax liabilities would cause economic hardship. See id.; sec. 301.6343-1(b)(4), Proced. & Admin. Regs.

The Commissioner may enter into a compromise to promote effective tax administration if compelling public policy or equity considerations identified by the taxpayer provide a sufficient basis for compromising the liability. Sec. 301.7122-1(b)(3)(ii), Proced. & Admin. Regs. A compromise will be justified only where, because of exceptional circumstances, collection of the full liability would undermine public confidence that the tax laws are being administered in a fair and equitable manner. Id. A taxpayer proposing a compromise on the basis of effective tax administration will be expected to demonstrate circumstances that justify a compromise even though a similarly situated taxpayer may have paid his

[*15] liability in full.  Id.  Petitioners made no such demonstration before Appeals or at trial.

Petitioners did not argue that public policy or equity considerations would justify a compromise based on effective tax administration.  Accordingly, we find that petitioners' offer-in-compromise is not supported by public policy or equity considerations to promote effective tax administration.

In reaching our decision, we have considered all arguments made by the parties, and to the extent not mentioned or addressed, they are irrelevant or without merit.  As a result, we find the settlement officer did not abuse his discretion in denying petitioners' OIC.

We hold that the determination to proceed with collection was not an abuse of the settlement officer's discretion, and the proposed collection action is sustained.  We are cognizant that our decision is of limited practical value considering respondent's assertion that as of September 23, 2014, respondent determined on the basis of events occurring after the notice of determination and the trial in this Court[10] that petitioners presently qualify to be placed in currently not collectible status.

---

[10]Respondent states that Mrs. Garber has lost her job and Mr. Garber had a heart attack sometime after March 27, 2013.

**[*16]** To reflect the foregoing,

<u>Decision will be entered</u>

<u>for respondent</u>.