T.C. Memo. 2020-35

UNITED STATES TAX COURT

WALTER NICKLAUS CLINE, Petitioner v.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket Nos. 16605-18W, 16947-18W.        Filed March 16, 2020.

P filed two whistleblower claims with the Whistleblower Office ("WBO") of the Internal Revenue Service ("IRS"). The first claim alleged that a taxpayer failed to report income for 2012 and 2013. It was denied by the WBO because the information provided did not result in the collection of any proceeds by the IRS. The second claim alleged that a taxpayer fraudulently failed to report income from business activity for 2016 and possibly also for other years. It was rejected by the WBO for failing to provide specific and credible information regarding tax underpayments or violations of internal revenue laws.

Held: The WBO did not abuse its discretion when it denied P's first claim and rejected P's second claim.

Walter Nicklaus Cline, for himself.

Shari A. Salu, Bartholomew Cirenza, and Ryan Z. Sarazin, for respondent.

[*2]                           MEMORANDUM OPINION

GUSTAFSON, Judge:  In these two consolidated cases,[1] petitioner Walter

Nicklaus Cline has appealed, pursuant to section 7623(b)(4),[2] two determinations

of the Whistleblower Office ("WBO") of the Internal Revenue Service ("IRS")

that decline to make awards to him.  The WBO denied his first claim for a

whistleblower award and rejected his second claim.  In both cases respondent, the

Commissioner of the IRS, has moved for summary judgment under Rule 121,

asserting that the undisputed material facts of record demonstrate that the WBO

did not abuse its discretion when it acted on Mr. Cline's claims.  For the reasons

stated below, we will grant summary judgment for the Commissioner in both

cases.

Background

The following facts are based on the administrative record developed for

each claim.  (In each case, the parties have filed the parts of the administrative

---

[1]Docket No. 16605-18W concerns Mr. Cline's claim that we call the "first claim".  Docket No. 16947-18W concerns his claim that we call the "second claim".

[2]Unless otherwise indicated, all section references are to the Internal Revenue Code of 1986 as in effect at all relevant times (codified in 26 U.S.C.), and all Rule references are to the Tax Court Rules of Practice and Procedure.

[*3] record upon which they rely, and no objections have been stated by either side as to the parts of the record that have been submitted or any parts that have been omitted.)

## About Mr. Cline

Mr. Cline is a retired first sergeant of the U.S. Army who was employed as an accountant after his military career.

## Alleged tax issues about Target 1

Mr. Cline alleges--and for purposes of deciding the Commissioner's motion, we assume (without finding)--the following facts about an individual taxpayer we refer to as "Target 1". In April 2013 Target 1 sold stock in a company to another individual for $650,000 but did not report any income from this transaction on any tax return filed for 2013. Target 1 failed to disclose any information about the sale of the stock to Target 1's tax preparer or to produce any records showing where the funds were deposited. Target 1 also (Mr. Cline concluded) underreported income for the years 2005 through 2013 by claiming deductions for business expenses that were not incurred and by maintaining poor accounting practices. Target 1 has been convicted of multiple criminal offenses that constitute fraudulent activity. Mr. Cline reported (and we assume) that he gained this

[*4] information as a "former employee" of Target 1, and we infer from his submission that his work related to Target 1's accounting practices.

Mr. Cline's submissions about Target 1

With respect to Target 1, Mr. Cline made two submissions to the WBO, one of which related to 2012 and the other to 2013:

On April 14, 2018, Mr. Cline submitted to the WBO a Form 211, "Application for Award for Original Information", alleging that in 2013 Target 1 sold 49% of a business to another individual and failed to report the $650,000 of proceeds from the sale as income. Documents Mr. Cline attached to the Form 211 in support of his claim included two copies of canceled checks payable to Target 1 totaling $650,000 and bearing a date in 2013. Evidently they were negotiated the following day. In a letter also attached to the Form 211 Mr. Cline explained that, while he previously "had heard * * * [it] was probable" that the target cashed the checks for personal use "instead of giving the funds to" the business, he was only recently able to obtain copies to verify the transaction.

Mr. Cline submitted a supplemental Form 211 to the WBO in July 2018, alleging that Target 1 failed to report $635,352 of "owner's draws on [Target 1's] K-1" in tax year 2012.

**[*5]** <u>The WBO's consideration of the first claim</u>

The WBO considered together the allegations against Target 1 regarding tax years 2012 and 2013, assigning to the two Forms 211 a single claim number.  The WBO acknowledged receipt of the claim in a letter to Mr. Cline dated July 19, 2018.  Two classifiers under the direction of the WBO[3] reviewed the Forms 211.  The second classifier concluded that, while the allegations met the criteria of section 7623(a), the period of limitations for assessment of tax against Target 1 had expired for tax year 2012 in October 2016 and for tax year 2013 in

---

[3]After the occurrence of the facts on which our Opinion in <u>Lacey v. Commissioner</u>, 153 T.C. __ (Nov. 25, 2019), was predicated, the claim evaluation function of the WBO was realigned:  The operation of this function is now shared by the Small Business/Self-Employed division, which is an operating division of the IRS.  Specifically, the current Internal Revenue Manual, pt. 1.1.26.1.3.5 (Jan. 11, 2018), states as follows for "Initial Claims Evaluation":

> (1)  Effective July 10, 2016, * * * the Initial Claim Evaluation Team (ICE) [of the WBO], was realigned to Small Business/Self-Employed (SB/SE).  ICE will continue to act as the primary receipt and control function responsible for performing whistleblower claim intake, monitoring, [and] award processing * * * .

> (2)  The Whistleblower Office has strategy, policy, administration, oversight, review, and reporting responsibility for the IRS Whistleblower Program.  * * *

> (3)  SB/SE has operational responsibility for the ICE Unit.  * * *

[*6] December 2017, and that the issue "cannot be worked in a current year".

Accordingly, the classifier recommended that the claim be denied.

Thereafter, a tax examining technician for the WBO drafted an award recommendation memorandum ("ARM") based largely on the recommendations of the second classifier. The ARM recommended to the manager of the Initial Claim Evaluation unit of the WBO that Mr. Cline's claim be denied for the same reasons that the second classifier had identified: the statute of limitations on assessment had expired, the issue was not a recurring issue, and the case could not be worked in the current year.

Consequently, the WBO denied Mr. Cline's claim rather than forward it to an IRS examiner for possible further action. The WBO sent Mr. Cline a final determination letter on August 8, 2018, which stated as follows:

> We have considered your application for an award dated 04/14/2018. Under Internal Revenue Code section 7623, an award may be paid only if the information provided results in the collection of tax, penalties, interest, additions to tax, or additional amounts based on the information provided. In this case, the information you provided did not result in the collection of any proceeds. Therefore, you are not eligible for an award. [Emphasis added.]
>
> Although the information you submitted did not qualify for an award, thank you for your interest in the administration of the internal revenue laws.

**[*7]**  This letter is a final determination for purposes of filing a petition with the United States Tax Court.  * * *

Alleged tax issues about Target 2

Mr. Cline alleges--and for purposes of deciding the Commissioner's motion, we assume (without finding)--the following facts about an individual taxpayer we refer to as "Target 2":

Target 2 retained Mr. Cline in his capacity as an accountant for the purpose of reconstructing the books of one of Target 2's companies.  Inspection of the company's books and records left Mr. Cline "uncertain" as to whether Target 2 was including profit and losses from additional companies under the same ownership in the accounting records for the company whose books he was hired to reconstruct.  Therefore Mr. Cline believed that Target 2's income tax liabilities were not accurately reported for the years 2009 through 2017.

Mr. Cline's submission about Target 2

On July 3, 2018, Mr. Cline submitted to the WBO a Form 211 alleging that he had been hired to reconstruct the company books for a business entity (the "primary entity") owned by Target 2 over the period October 2007 through 2018, and that in the course of that work he discovered two additional business entities owned by Target 2 for which it appeared Target 2 had not filed tax returns.  Mr.

[*8] Cline initially "ran the income and expenses [for the additional business entities] through * * * [the primary entity] accounts" even though "we believe" that at least one of the additional companies "should have had its own set of books--and [should have] had its own tax return filed".

Mr. Cline was "uncertain" about whether Target 2 was accurately reporting profit and losses for the additional business entities, and he identified a number of "[u]nknown [e]xpenses" that would affect the amount of profit that should have been reported by the primary entity for 2016 (between $286,204 and $298,115). He also discovered $252,432 in purported "[o]wner's [d]raws" for which Target 2 did not account for 2016.

Mr. Cline terminated his relationship with Target 2 when he was pressured to "manipulate the [primary entity's bookkeeping] data without rhyme or reason." He noted that there was "too much deception and probable fraud--and * * * [he could not] support the client in any type of illegal activities". Mr. Cline attached to his claim apparent bookkeeping records for the primary entity, part of Target 2's Form 1040, "U.S. Individual Income Tax Return", for 2016 (including Schedule C, "Profit or Loss From Business"), and a Schedule K-1, "Shareholder's Share of Income, Deductions, Credits, etc.", and Form W-2, "Wage and Tax

**[*9]** Statement", issued to Target 2 by the primary entity for 2016. The Form 211 was date stamped and received by the WBO on July 12, 2018.

The WBO's consideration of the second claim

The WBO assigned the second claim a claim number. An initial classifier under the direction of the WBO, see supra note 3, then reviewed the claim and concluded that, while the allegations met the criteria of section 7623(a), the claim was speculative and did not contain specific and credible information supporting non-compliance with a Federal tax issue. The initial classifier noted that the internal records of the IRS seemed to indicate that Target 2 included all forms of income on Target 2's tax return for 2016. Accordingly, the initial classifier recommended that the claim be rejected on the basis that the "[a]llegations are purely speculative in nature."

Thereafter, a tax examining technician for the WBO drafted an ARM based largely on the recommendations of the initial classifier. The ARM recommended to the manager of the Initial Claim Evaluation unit of the WBO that Mr. Cline's claim be rejected for the same reasons that the initial classifier had identified--i.e., the "[a]llegations are purely speculative in nature." Consequently, rather than forwarding the claim to an IRS examiner for possible action, the WBO rejected it

**[*10]** on August 15, 2018, with the issuance of a letter entitled "Final Decision

Under Section 7623(a)" stating, in relevant part:

> The Whistleblower Office has considered your Form 211, Application for Award for Original Information, dated 7/3/2018. Internal Revenue Code section 7623 provides that an award may be paid only if the information provided results in the collection of tax, penalties, interest, additions to tax, or additional amounts.[4] The Whistleblower Office has made a final decision to reject your claim for an award.
>
> The claim has been rejected because the information provided was speculative and/or did not provide specific or credible information

---

[4]Because the WBO summarily rejected Mr. Cline's second claim and did not forward it for consideration of a possible audit, it was inevitable that the IRS did not proceed with an administrative or judicial action against Target 2 on the basis of information provided by Mr. Cline. Accordingly, the IRS also did not collect any proceeds as a result of an administrative or judicial action predicated on such information. In his motion the Commissioner has cited the lack of administrative or judicial action and the lack of collected proceeds as grounds for summary judgment, but the WBO's letter rejecting Mr. Cline's claim does not cite these facts as its basis. Rather, the WBO's rejection letter states instead that "[t]he claim has been rejected <u>because</u> the information provided was speculative and/or did not provide specific or credible information regarding tax underpayments or violations of internal revenue laws." (Emphasis added.) In <u>Lacey v. Commissioner</u>, 153 T.C. at __ (slip op. at 37-38), we held that when we review for abuse of discretion the WBO's summary rejection of a claim, we review the WBO's stated grounds that the claim failed to meet certain threshold requirements, rather than sustaining the rejection on the unstated grounds that there has been no administrative or judicial action initiated by, nor proceeds collected by, the IRS as a result of the information that is the basis of the whistleblower's claim. That is, we review the determination that the WBO actually made, as reflected in its letter, and not a hypothetical determination that it did not actually make. Consequently, the lack of administrative or judicial action against Target 2 and the lack of collected proceeds from Target 2 are not the basis of our opinion as to the claim in docket No. 16947-18W.

**[*11]** regarding tax underpayments or violations of internal revenue laws. [Emphasis added.]

This letter is a final determination for purposes of filing a petition with the United States Tax Court. * * *

Tax Court proceedings

Mr. Cline timely petitioned this Court on August 23, 2018, for review of the WBO's decision as to Target 1 and on August 28, 2018, for review of the WBO's decision as to Target 2. In each case the Commissioner has filed a motion for summary judgment, to which Mr. Cline objects.

Discussion

I.     Legal principles

A.     Summary judgment

The purpose of summary judgment is to expedite litigation and avoid unnecessary trials. Fla. Peach Corp. v. Commissioner, 90 T.C. 678, 681 (1988). The Court may grant summary judgment when there is no genuine dispute as to any material fact and a decision may be rendered as a matter of law. Rule 121(b); Sundstrand Corp. v. Commissioner, 98 T.C. 518, 520 (1992), aff'd, 17 F.3d 965 (7th Cir. 1994). In deciding whether to grant summary judgment, we draw factual inferences in the light most favorable to the nonmoving party, Sundstrand Corp. v. Commissioner, 98 T.C. at 520--in this instance, Mr. Cline.

**[\*12]** B.     The nature of the WBO's review of and action on award claims

     1.     Threshold evaluation and rejection

Section 7623(b) provides the circumstances in which the IRS shall give (in the words of the title to subsection (b)) "Awards to Whistleblowers" and charges the WBO with performing the initial evaluation of whistleblower claims to determine whether they meet the minimum standards for an award.  See 26 C.F.R. sec. 301.7623-1(c)(4), Proced. & Admin. Regs.[5]  This initial evaluation occurs before any referral to an IRS operating division for further action on the information set forth in the claim.  The threshold criteria[6] by which the WBO evaluates a claim's potential eligibility for an award include that the claim:

- "contain[s] specific * * * information";

- "contain[s] * * * credible information";

- provides "information that the whistleblower believes will lead to collected [tax] proceeds";

- reports "fail[ure] to comply with the internal revenue laws";

---

[5]See also Tax Relief and Health Care Act of 2006, Pub. L. No. 109-432, sec. 406(b)(1)(B), 120 Stat. at 2960 (providing that the WBO "shall analyze information received from any individual * * * and either investigate the matter itself or assign it to the appropriate Internal Revenue Service office").

[6]As is explained below, the Tax Court reviews a WBO determination for abuse of discretion; and when that determination is a "rejection" of the claim, we consult these threshold criteria.

[*13] •  "identif[ies] the person(s) believed to have failed to comply with the internal revenue laws";

•  "provide[s] substantive information, including all available documentation"; and

•  does not "provide speculative information".

Lacey v. Commissioner, 153 T.C. __, __ (slip op. at 24) (Nov. 25, 2019) (quoting 26 C.F.R. sec. 301.7623-1(c)(1), (4)).

If a claim fails to meet those criteria, then the WBO may summarily "reject" the claim without further consideration. "A rejection is a determination that relates solely to the whistleblower and the information on the face of the claim that pertains to the whistleblower." 26 C.F.R. sec. 301.7623-3(c)(7), Proced. & Admin. Regs. (Such a threshold rejection by the WBO will necessarily preclude any subsequent administrative or judicial action against any taxpayer and any subsequent collection of proceeds from the taxpayer on the basis of the information provided. See Lacey v. Commissioner, 153 T.C. at __ (slip op. at 37). But see supra note 4.)

2. Substantive consideration and denial

A "denial" is different from a "rejection". "A denial is a determination that relates to or implicates taxpayer information." 26 C.F.R. sec. 301.7623-3(c)(8). The WBO handles a denial of a claim similarly to a rejection, in that both

**[\*14]** determinations result in the WBO's providing written notice to the taxpayer stating that it declines to make an award and giving the basis for its determination. See id. paras. (b)(3), (c)(7) and (8).  The WBO's denial of a claim indicates that "the IRS either did not proceed based on the information provided by the whistleblower * * * or did not collect proceeds" as a result of proceeding against the taxpayer on the basis of the whistleblower's information.  Id. para. (c)(8).  A denial is a determination that is made after the WBO engages in some substantive consideration of the claim.  See Lacey v. Commissioner, 153 T.C. at __ (slip op. at 26).

      C.     Standard and scope of Tax Court review of whistleblower awards

Section 7623(b)(4) provides that a "determination regarding an award" may be "appealed to the Tax Court (and the Tax Court shall have jurisdiction with respect to such matter)."  As we held in Kasper v. Commissioner, 150 T.C. 8, 21-23 (2018), in a whistleblower case our review is generally restricted to the administrative record, and we review the WBO's determinations not de novo but rather for abuse of discretion.  An abuse of discretion exists when a determination is arbitrary, capricious, or without sound basis in fact or law.  Murphy v. Commissioner, 125 T.C. 301, 320 (2005), aff'd, 469 F.3d 27 (1st Cir. 2006).

**[\*15]** It is not to the Tax Court but to the Secretary of the Treasury that Congress has given the authority to "make the inquiries, determinations, and assessments of all taxes", sec. 6201,[7] and to "collect the taxes", sec. 6301.[8] The Tax Court has no practical means for evaluating the IRS's audit priorities, its allocation of its audit resources, or its judgments about the likelihood of collecting particular liabilities. Congress has given to the Tax Court not plenary oversight over the IRS but rather circumscribed jurisdiction to review certain actions in certain circumstances. In the award context, Congress has given the Tax Court jurisdiction to review the determinations of the WBO. Consequently, "we do not review the IRS's decision whether to audit a target in response to a whistleblower's claim and * * * we have no authority to require the IRS to explain a decision not to audit." Lacey v. Commissioner, 153 T.C. at __ (slip op. at 30).

---

[7]See also sec. 7602(a) ("For the purpose of ascertaining the correctness of any return, making a return where none has been made, determining the liability of any person for any internal revenue tax * * *, or collecting any such liability, the Secretary is authorized" to conduct examinations).

[8]See also sec. 7801(a)(1) ("the administration and enforcement of this title shall be performed by or under the supervision of the Secretary of the Treasury"); sec. 7803(a)(2) ("The Commissioner shall have * * * the power to--
(A) administer, manage, conduct, direct, and supervise the execution and application of the internal revenue laws").

**[\*16]** II.    <u>Analysis</u>

    A.    <u>First Claim</u>

By denying Mr. Cline's first claim, the WBO made a determination that implicated not just information about Mr. Cline and his claim but rather <u>taxpayer</u> information, <u>see</u> 26 C.F.R. sec. 301.7623-3(c)(8), i.e., in this instance, the date by which the period of limitations had run as to Target 1. The classification function under the direction of the WBO conducted an analysis beyond the facial allegations of the claim and the apparent credibility of the whistleblower. Specifically, the administrative record shows that the classifiers received Mr. Cline's claim, evaluated its contents, and determined that the period of limitations on assessment for the relevant years had expired. To the extent that the denial of Mr. Cline's claim encompassed a decision not to audit, we do not review that decision.[9] <u>See, e.g.</u>, <u>Epstein v. Commissioner</u>, T.C. Memo. 2019-81, at \*7-\*8

---

[9]As we stated above, "we do not review the IRS's decision whether to audit a target in response to a whistleblower's claim". <u>Lacey v. Commissioner</u>, 153 T.C. at __ (slip op. at 30). Even if we did proceed to review the classifiers' reasoning, they were right that assessment of tax would be barred by the three-year period of limitations of section 6501(a). It is also true, as Mr. Cline insists, that section 6501(c)(1) provides an exception to the three-year bar: "In the case of a false or fraudulent return with the intent to evade tax, the tax may be assessed \* \* \* at any time", so that where an audit yields evidence proving fraud, the three-year limit does not apply. However, "[i]n any proceeding involving the issue whether the petitioner has been guilty of fraud with intent to evade tax, the burden

(continued...)

[*17] (affirming the WBO's denial of the claim and reasoning that the whistleblower "'may disagree with respondent's legal conclusions for why there was no * * * tax due,' but 'Whistleblower awards are preconditioned on the Secretary's proceeding with an administrative or judicial action,' which did not happen here" (quoting Cooper v. Commissioner, 136 T.C. 597, 601 (2011))). The WBO decided not to forward Mr. Cline's first claim for any further investigation by an IRS operating division. Section 7623(b)(4) does not empower us to require further administrative or judicial action. See Cohen v. Commissioner, 139 T.C. 299, 302 (2012), aff'd, 550 F. App'x 10 (D.C. Cir. 2014).

We do not perceive any abuse of discretion in a decision of the WBO to deny a claim where, as here, the denial was predicated on the fact that no administrative or judicial action occurred and no proceeds were collected as a result of information provided in the claim. In reviewing the WBO's denial, we do not substitute our judgment for its judgment but rather, as we have noted,

---

[9](...continued)
of proof in respect of such issue shall be upon the Secretary", sec. 7454(a), "and that burden of proof is to be carried by clear and convincing evidence", Rule 142(b). Especially when it faces the prospect of that heightened burden of proof (such as to prove fraud, or even to prove a substantial omission of an item having a six-year period of limitations under section 6501(e)), the IRS's decisions about how to allocate its audit resources must take into account the costs of developing "clear and convincing" evidence and its hazards of litigation. We do not review these judgments that Congress has committed to the agency.

[*18] review only for abuse of discretion. It is undisputed that, as the WBO stated in its determination to Mr. Cline, "the information you provided did not result in the collection of any proceeds". Accordingly, we hold that the WBO did not abuse its discretion when it determined that "[t]herefore, you are not eligible for an award" and denied Mr. Cline's first claim. We will therefore grant summary judgment to the Commissioner as to that first claim.

B.      Second claim

The administrative record shows that classification personnel under the direction of the WBO received Mr. Cline's second claim, evaluated its contents, considered its allegations, and found them "purely speculative". The WBO rejected the claim "because the information provided was speculative and/or did not provide specific or credible information regarding tax underpayments or violations of internal revenue laws".

In reviewing the WBO's rejection of the second claim, we do not substitute our judgment for its judgment but review only for an abuse of discretion. The WBO's conclusion that the claim was "speculative" does not appear to lack a sound basis in fact and law because the claim stated that Mr. Cline was "uncertain", that "we believe" there was improper bookkeeping, that there were "[u]nknown [e]xpenses", that there was "probable fraud", and that the taxpayer's

**[*19]** manipulations were "without rhyme or reason".  (Emphasis added.)

Accordingly, we hold that the WBO did not abuse its discretion when it rejected

Mr. Cline's second claim.  We will therefore grant summary judgment to the

Commissioner as to the second claim.

## Conclusion

We hold that the WBO did not abuse its discretion when it denied Mr.

Cline's first claim or when it rejected his second claim.

To reflect the foregoing,

<u>Appropriate orders and decisions will</u>

<u>be entered</u>.