# United States Tax Court

T.C. Memo. 2026-56

JOSEPH WHITE,
Petitioner

v.

COMMISSIONER OF INTERNAL REVENUE,
Respondent

————

Docket No. 7838-25L.                           Filed June 29, 2026.

————

*Frank Agostino*, for petitioner.

*Matthew S. Renetzky* and *Thomas A. Deamus*, for respondent.


MEMORANDUM OPINION

LAUBER, *Judge*:  In this collection due process (CDP) case, petitioner seeks review pursuant to section 6330(d)(1)[1] of the determination by the Internal Revenue Service (IRS or respondent) to uphold a Notice of Intent to Levy and Your Right to a Hearing (levy notice).  The IRS took this action to collect $1.2 million in restitution-based assessments (RBAs) it had made against petitioner under section 6201(a)(4).  That provision authorizes the IRS, following a taxpayer's criminal tax conviction, to "assess and collect the amount of restitution [ordered by a sentencing court] for failure to pay any tax imposed under this title in the same manner as if such amount were such tax."

In February 2017 petitioner was convicted under section 7201 for willfully attempting to evade payment of the tax due for 2000–2011.  The

_____

[1] Unless otherwise indicated, statutory references are to the Internal Revenue Code, Title 26 U.S.C., in effect at all relevant times, and Rule references are to the Tax Court Rules of Practice and Procedure.  We round most monetary amounts to the nearest dollar.

[*2] restitution ordered by the sentencing court, $1.2 million, equaled petitioner's aggregate assessed but unpaid Federal income tax liabilities for 2000–2011 as of that date. In April 2017 the IRS made RBAs totaling $1.2 million.

In September 2022 the Department of Justice (DOJ) initiated, and in September 2023 the parties settled, a civil lawsuit under section 6502 to reduce to judgment petitioner's unpaid tax liabilities for 2000–2011. With additional interest, those liabilities had grown to $1,893,404. DOJ agreed to treat a judgment in that amount as fully satisfied if petitioner made monthly payments totaling $1.6 million over four years under a specified payment plan, with the last payment due in July 2027. The Federal district court entered judgment accordingly. Petitioner has made all payments required by the payment plan—totaling almost $1 million—from November 2023 to the present.

While the collection litigation was pending, the IRS issued, and the IRS Independent Office of Appeals (Appeals) subsequently upheld, the levy notice at issue, seeking to collect $1,101,788, the unpaid portion of the $1.2 million aggregate RBA. We conclude that allowing the IRS to seek immediate collection of that sum via levy would be inconsistent, in at least two respects, with the September 2023 compromise settlement between DOJ and petitioner. Finding that the settlement officer (SO) abused his discretion in sustaining the levy, we will deny respondent's Motion for Summary Judgment. And treating petitioner's opposition to the Motion as a Cross-Motion for Summary Judgment, we will grant the Cross-Motion and enter a decision declining to sustain the collection action.

*Background*

The following facts are derived from the parties' pleadings and Motion papers, Declarations and attached Exhibits, and the certified Administrative Record of the CDP proceeding. *See* Rule 121(c). Pursuant to Rule 201 of the Federal Rules of Evidence, we take judicial notice of certain filings in petitioner's criminal tax case. *See United States v. White*, No. 16-cr-10 (E.D. Pa. filed Jan. 13, 2016). We also take judicial notice of certain filings in the civil collection action involving petitioner's 2000–2011 tax years. *See United States v. White*, No. 22-cv-3795 (E.D. Pa. filed Sept. 23, 2022). Petitioner resided in Pennsylvania when he timely petitioned this Court.

[*3] I.    *Petitioner's Civil Tax Liabilities for 2000–2011*

Petitioner earned substantial income as an electrical contractor during 2000–2011. He did not file returns for 2000–2008 by the time prescribed for filing. On August 6, 2009, he filed delinquent returns for those nine years. He filed those returns at the insistence of attorneys for his ex-wife, with whom he was engaged in a divorce proceeding. He did not enclose full payment for the tax liabilities reported on the returns.

Several months later the IRS assessed the tax shown on the returns, plus interest and additions to tax for failure to timely file, failure to timely pay, and failure to pay estimated tax. *See* §§ 6651(a)(1) and (2), 6654. The amounts assessed were as follows:

| Tax Period | Assessment Date | Tax | Additions to Tax | Interest | Total Assessment |
|---|---|---|---|---|---|
| 2000 | 09/28/2009 | $39,121 | $19,363 | $32,016 | $90,500 |
| 2001 | 10/05/2009 | 51,935 | 26,438 | 35,478 | 113,851 |
| 2002 | 10/05/2009 | 53,131 | 27,013 | 30,667 | 110,811 |
| 2003 | 10/05/2009 | 45,562 | 22,050 | 22,681 | 90,293 |
| 2004 | 10/05/2009 | 34,372 | 16,708 | 14,347 | 65,427 |
| 2005 | 10/05/2009 | 50,400 | 22,707 | 15,799 | 88,906 |
| 2006 | 09/07/2009 | 46,687 | 19,472 | 9,046 | 75,205 |
| 2007 | 08/31/2009 | 191,445 | 60,161 | 16,806 | 268,412 |
| 2008 | 08/31/2009 | 56,011 | 2,021 | 855 | 58,887 |
| **TOTAL** | | **$568,664** | **$215,933** | **$177,695** | **$962,292** |

Petitioner filed timely returns for 2009 and 2010, and in February 2013 he filed a delinquent return for 2011. For 2009 and 2010 he enclosed no payment for the tax liabilities reported on the returns; for 2011 he enclosed a payment of $93,313, but his bank did not honor the check. The IRS assessed the tax shown on the returns, plus interest and applicable additions to tax for failure to timely file, failure to timely pay, and failure to pay estimated tax. *See* §§ 6651(a)(1) and (2), 6654. The amounts assessed were as follows:

[*4]

| Tax Period | Assessment Date | Tax | Additions to Tax | Interest | Total Assessment |
|---|---|---|---|---|---|
| 2009 | 07/19/2010 | $95,649 | $2,416 | $1,001 | $99,066 |
| 2010 | 08/29/2011 | 56,567 | 1,791 | 830 | 59,188 |
| 2011 | 03/18/2013 | 89,517 | 17,603 | 2,022 | 109,142 |
| **TOTAL** | | **$241,733** | **$21,810** | **$3,853** | **$267,396** |

For each of the 12 years referenced above, the IRS issued petitioner a timely notice and demand for payment, to which he did not respond. The IRS then commenced collection activity. In response to notices of proposed levy and tax lien filing, petitioner requested in June 2010 a CDP equivalent hearing for 2000–2008. During the hearing he initially requested an Installment Agreement (IA). In support of the IA he submitted Form 433–A, Collection Information Statement for Wage Earners and Self-Employed Individuals, which contained materially false statements about his assets and liabilities. The CDP equivalent hearing was resolved on September 15, 2010, when the IRS issued a decision letter.

On October 4, 2010, petitioner submitted an offer-in-compromise (OIC) for tax years 2000–2009, predicating his offer on "doubt as to collectibility." He failed to supply documentation about his assets and liabilities, as requested by the IRS during its review of the OIC. On March 7, 2011, the IRS rejected his offer. Throughout this period petitioner was secretly diverting money from two corporations for his personal use.

On March 13, 2014, petitioner filed for bankruptcy, which forced the IRS to suspend collection activity. Upon motion by the U.S. trustee, the bankruptcy court dismissed his case on June 2, 2016, finding that he had filed the bankruptcy petition and proceeded during the bankruptcy case in bad faith.

II.    *Petitioner's Criminal Tax Case*

On January 13, 2016, DOJ filed a Criminal Information against petitioner in the U.S. District Court for the Eastern District of Pennsylvania. The Information charged one count of violating section 7201, which criminalizes any willful attempt "to evade or defeat any tax imposed by this title or the payment thereof." DOJ alleged that petitioner had "willfully attempted to evade and defeat the payment of a large part of the tax due . . . for calendar years 2000 through 2011." He allegedly

[*5] did so by "diverting funds from two corporations which he used for personal consumption," by creating a Nevada limited liability company as a nominee, by engaging in a scheme to conceal his receipt of gambling income, and by other means.

On May 2, 2016, on advice of counsel, petitioner pleaded guilty to violation of section 7201 as charged in the Information. The sentencing hearing was held on February 1, 2017. During the hearing counsel for petitioner and DOJ agreed that the principal amount of tax then due for 2000–2011 was $748,000 and that, "when interest and penalties [viz, additions to tax] are added to the principal tax owed of $748,000, the total amount that would be due and owing . . . would be $1.2 million."

On February 3, 2017, the district court entered judgment on petitioner's plea and sentenced him to 24 months in prison, followed by 3 years of supervised release. As a separate component of the sentence, the court ordered restitution under 18 U.S.C. § 3663(a)(3). Finding that the IRS had incurred a "tax loss" of $1.2 million, it ordered petitioner to pay restitution in that amount to the IRS. The $1.2 million figure corresponded to the district court's best estimate, as of February 2017, of petitioner's outstanding Federal tax liabilities for 2000–2011. Concluding that petitioner "does not have the ability to pay interest," the Court ruled that "the interest requirement is waived for the restitution." The judgment ordered petitioner to begin making $250 monthly payments to the IRS beginning 30 days after his release from prison. He was released from prison early, on December 28, 2018.

III.   *The RBAs and the Instant CDP Case*

On April 27, 2017, as authorized by section 6201(a)(4), the IRS made against petitioner RBAs totaling $1.2 million, the amount of restitution ordered by the district court. The aggregate RBA is identical to petitioner's aggregate unpaid income tax liability for 2000–2011, as of February 2017, as calculated by the sentencing court.

More than five years later, the IRS sent petitioner the levy notice for tax years 2001 through 2011. The liabilities appearing on the levy notice totaled $1,101,788, reflecting the unpaid portion of the aggregate RBA. In response to the levy notice petitioner timely submitted, on October 12, 2022, Form 12153, Request for a Collection Due Process or Equivalent Hearing. He checked the box requesting an IA. In an attachment he requested "verification of assessments for all years," stated that he was challenging "the tax liabilities, including penalties and

[*6] interest" for all years, and suggested "a partial pay installment agreement in the amount of $5,000 per month."

The case was assigned to an SO from Appeals. On April 13, 2023, the SO sent petitioner a letter scheduling a telephone conference for May 24, 2023. During that conference petitioner's representative (who serves as his counsel in this case) noted that DOJ had commenced a civil action (described below) against petitioner under section 6502. Substantive proceedings in the CDP case were then temporarily suspended.

IV.   *DOJ Collection Litigation*

On September 23, 2022, DOJ initiated a civil lawsuit under section 6502 to reduce to judgment petitioner's assessed but unpaid Federal income tax liabilities for 2000–2011. DOJ moved for summary judgment, alleging that petitioner's unpaid income tax liabilities for those years—including tax, additions to tax, and interest—totaled $1,893,404 as of August 21, 2023. The difference between that figure and the $1.2 million of restitution ordered by the sentencing court reflected the accrual of interest and additions to tax after February 2017 on petitioner's 2000–2011 tax liabilities, minus tax payments he had made in the interim.

In its memorandum in support of summary judgment DOJ acknowledged that the $1,893,404 judgment it sought was "related" to the $1.2 million of restitution the district court had ordered, because petitioner's "criminal conviction [was] based, in part, on his failure to pay the [2000–2011] income tax liability." But "the existence of a criminal restitution order," DOJ explained, "does not affect the accrual of interest and [additions to tax] on unpaid federal income taxes." In DOJ's view, those items continued to accrue on petitioner's 2000–2011 tax liabilities "in the same manner as they would for any other taxpayer, regardless of the restitution that he was ordered to pay."

DOJ emphasized that it sought "a judgment on [the 2000–2011] income tax assessments, not on any assessment tied to the criminal restitution order." It agreed that, if petitioner "makes a payment towards the restitution ordered in his criminal case, that amount will be deducted from any judgment in this case to ensure that the government will only collect the unpaid tax liability once."

On September 29, 2023, DOJ and counsel for petitioner reached a settlement of the collection case. Petitioner consented to a "judgment in the amount of $1,893,403.87 as of August 21, 2023, plus statutory

[*7] interest that has accrued and will continue to accrue until the liability is paid in full, for [petitioner's] tax liabilities for 2000 through 2011."

In exchange DOJ agreed that "the United States will treat the judgment [of $1,893,403.87] as satisfied . . . and take no further collection action against [petitioner] for his 2000 through 2011 income tax liabilities if [he] pays to the United States a total of $1,600,000 by July 1, 2027," with monthly payments due according to a specified payment plan. The payment plan required petitioner to make monthly payments of $4,000 in November and December 2023, followed by monthly payments totaling $108,000 per calendar quarter through June 1, 2027, followed by a final payment of $80,000 on July 1, 2027. If petitioner failed to make a payment as called for by the payment plan, "the United States [is] entitled to collect the full judgment [of $1,893,403.87]."

On October 2, 2023, the district court entered judgment consistent with the settlement agreement. Petitioner has fully complied with the agreed-upon payment plan, making $4,000 payments each month and additional $96,000 payments on the first day of each calendar quarter, from November 2023 to the present. As of March 2, 2026, he had made payments of almost $1 million toward his 2000–2011 income tax liabilities.[2]

V.   *Conclusion of CDP Hearing*

The SO resumed discussions with petitioner's counsel in February 2024, and those discussions continued through October 2024. Although petitioner had stated in his hearing request that he was challenging "the tax liabilities, including penalties and interest" for all years, the SO explained that section 6201(a)(4)(C) prevented him from challenging his underlying liability for the RBAs. Petitioner urged that the collection action was inconsistent with the parties' settlement of the collection suit, under which petitioner was to pay a compromise amount according to a specified payment plan. The SO replied that the RBA was a separate liability that "was not included in the [district court's] judgement [sic]." Petitioner stated his disagreement with that position,

---

[2] Respondent concedes that petitioner has paid in full his liabilities for tax years 2001–2006. On May 21, 2026, he accordingly filed a Motion to Dismiss on Ground of Mootness because there is no remaining case or controversy as to those tax years. *See Zuch v. Commissioner*, 145 S. Ct. 1707, 1714 (2025). We will grant respondent's Motion to Dismiss when we enter a decision in this case.

[*8] indicated that he did not seek a collection alternative at that time, and asked the SO to issue a notice of determination.

On May 1, 2025, Appeals sent petitioner a Notice of Determination sustaining the proposed levy. It acknowledged that "DOJ entered into a payment agreement with you" regarding the 2000–2011 tax liabilities. But the Notice asserted that "DOJ did not include the RBA in [its] agreement with the you [sic] because IRS Advisory withdrew the RBAs from the referral to DOJ." Appeals stated that petitioner "cannot challenge the Restitution assessment per IRC § 6201(a)(4)(C)" and noted that he "did not provide the requested financial documentation to consider a collection alternative." The Notice accordingly concluded that "[t]here is no other form of relief we can provide at this time."

VI.    *Tax Court Proceedings*

Petitioner timely petitioned this Court for review, contending that "Appeals sustained collection actions that were inconsistent with the resolution reached in the DOJ settlement." On January 12, 2026, the IRS filed a Motion for Summary Judgment, and petitioner timely responded to the Motion. At the Court's direction, respondent filed a Reply to petitioner's Response on April 20, 2026.

On March 20, 2026, petitioner filed a Motion for Leave to File First Amended Petition, which respondent opposed. In the Motion petitioner sought leave to amend his Petition to include allegations relating to accrual of interest following a COVID–19 disaster declaration under section 7508A. Because petitioner advanced no such argument during the CDP hearing—indeed, he could not have reasonably advanced such an argument, since the RBAs he challenged included no post-2017 interest—we denied the Motion for Leave by Order served April 22, 2026.

*Discussion*

I.    *Summary Judgment Standard*

The purpose of summary judgment is to expedite litigation and avoid costly, unnecessary, and time-consuming trials. *See FPL Grp., Inc. & Subs. v. Commissioner*, 116 T.C. 73, 74 (2001). We may grant summary judgment when the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law. Rule 121(a)(2); *Sundstrand Corp. v. Commissioner*, 98 T.C. 518, 520 (1992), *aff'd*, 17 F.3d 965 (7th Cir. 1994). In deciding whether to grant summary judgment, we construe factual materials and

**[\*9]** inferences drawn from them in the light most favorable to the non-moving party. *Sundstrand Corp.*, 98 T.C. at 520. Finding that there exist no genuine disputes of material fact, we conclude that summary adjudication is appropriate.

II. *Restitution Background*

Section 6201(a)(4)(A) provides that "[t]he Secretary shall assess and collect the amount of restitution under an order pursuant to section 3556 of title 18, United States Code, for failure to pay any tax imposed under this title in the same manner as if such amount were such tax."[3] The IRS may make an RBA only after the defendant has exhausted all appeals and the restitution order has become final. *See* § 6201(a)(4)(B). Congress has exempted RBAs from the usual period of limitations on assessment. *See* § 6501(c)(11); *Carpenter v. Commissioner*, 152 T.C. 202, 210 (2019), *aff'd*, 788 F. App'x 187 (4th Cir. 2019). The usual restrictions on assessment imposed by section 6213 likewise do not apply to RBAs. *See* § 6213(b)(5).

The IRS followed these procedures here. Following petitioner's guilty plea, the IRS assessed the $1.2 million of restitution ordered by the sentencing court, which ruled that "the interest requirement is waived for the restitution." The IRS accordingly assessed no underpayment interest in connection with the RBA. *See Klein v. Commissioner*, 149 T.C. 341, 361–62 (2017) (holding that section 6201(a)(4) does not authorize the IRS to assess, upon the amount of restitution ordered by the sentencing court, underpayment interest or additions to tax). Rather, the $1.2 million assessed as restitution precisely equaled petitioner's unpaid 2000–2011 income tax liabilities as of February 2017, as agreed by the parties and determined by the sentencing court.

III. *Standard of Review*

Section 6330(d)(1) does not prescribe the standard of review that this Court should apply in reviewing an IRS administrative determination in a CDP case. The general parameters for such review are marked out by our precedents. Where the validity of a taxpayer's underlying liability is properly at issue, we review the IRS's determination de novo.

---

[3] Where a case involves violations of title 26, such as the present one, 18 U.S.C. § 3556 grants the district court discretionary authority to order restitution in accordance with 18 U.S.C. § 3663. *See also* 18 U.S.C. § 3663(a)(3) ("The court may also order restitution in any criminal case to the extent agreed to by the parties in a plea agreement.").

**[\*10]** *Sego v. Commissioner*, 114 T.C. 604, 610 (2000); *Goza v. Commissioner*, 114 T.C. 176, 181–82 (2000). Where the taxpayer's underlying liability is not properly before us, we review the IRS's determination for abuse of discretion only. *Jones v. Commissioner*, 338 F.3d 463, 466 (5th Cir. 2003) (per curiam); *Goza*, 114 T.C. at 182. Abuse of discretion exists when a determination is arbitrary, capricious, or without sound basis in fact or law. *See Murphy v. Commissioner*, 125 T.C. 301, 320 (2005), *aff'd*, 469 F.3d 27 (1st Cir. 2006).

In this CDP case petitioner's underlying liability consists of the RBAs the IRS has made. *See Klein*, 149 T.C. at 349. Section 6201(a)(4) provides that "[t]he amount of such restitution may not be challenged by the person against whom assessed on the basis of the existence or amount of the underlying tax liability in any proceeding authorized under this title." § 6201(a)(4)(C). As Appeals correctly determined, petitioner was precluded from challenging his RBA liability during the CDP hearing. We thus review the SO's actions for abuse of discretion only. *See Carpenter*, 152 T.C. at 220–21; *Klein*, 149 T.C. at 348.

IV. *Analysis*

In deciding whether the SO abused his discretion in sustaining the proposed collection action, we consider whether he (1) properly verified that the requirements of applicable law or administrative procedure were met, (2) considered relevant issues petitioner raised, and (3) considered "whether any proposed collection action balances the need for the efficient collection of taxes with the legitimate concern of [petitioner] that any collection action be no more intrusive than necessary." § 6330(c)(3). The SO did verify that the RBAs were proper when made. But we find that, by upholding a levy to collect the RBAs, he fell short of the other statutory requirements.

Petitioner advances two principal arguments, ramified in various ways. He points out correctly that the RBAs for 2001–2011 are "identical" to petitioner's unpaid tax liabilities for 2000–2011, calculated as of February 2017, when the district court accepted his guilty plea. For that reason, he contends that sustaining the levy would lead to "duplicative" taxation and result in "impermissible double punishment" for the same tax loss.

On this point we disagree. Although the return-based assessments and the RBAs are distinct liabilities, the IRS cannot collect them both. As DOJ acknowledged to the district court in the collection case,

[*11] if petitioner "makes a payment towards the restitution ordered in his criminal case, that amount will be deducted from any judgment in this case to ensure that the government will only collect the unpaid tax liability once." If the IRS were permitted to collect the RBAs via levy, the amount collected would be credited to his accounts for the relevant tax years, and no double collection would result.

We do agree with petitioner, however, that sustaining the collection action would be inconsistent with the resolution reached in the DOJ settlement executed in September 2023. DOJ thereby agreed that the United States would treat petitioner's 2000–2011 tax liabilities as fully satisfied, and that it would "take no further collection action against [him] for [those] liabilities," if he paid the IRS $1.6 million by July 1, 2027, with monthly payments due according to a specified payment plan.

In his Memorandum opposing summary judgment, petitioner represents that he "has remained in continuous compliance with this judicial resolution." In support of that representation he submitted a Declaration, dated March 19, 2026, attaching evidence that he has made payment of every monthly installment due under the DOJ payment plan from November 1, 2023, through March 2, 2026. In his Reply filed at our direction on April 17, 2026, respondent does not dispute any of these facts. In fact respondent represents that, as of the filing of his Reply, the RBAs for 2001–2005 are "fully paid" by petitioner.

As of May 1, 2025, when Appeals upheld the levy, petitioner had made monthly payments of $652,000 toward his 2000–2011 tax liabilities of $1.6 million, reducing those liabilities to $948,000. The SO did not mention these payments. The levy the SO sustained, for $1,101,788, exceeded petitioner's then-existing tax liabilities for 2000–2011 by $153,788. With additional monthly payments through March 2, 2026, petitioner has now paid almost $1 million toward his 2000–2011 tax liabilities, reducing to roughly $600,000 the balance due under the DOJ settlement. If we permitted the IRS to collect $1,101,788 via levy, that recovery would exceed petitioner's unpaid balance by about $500,000.

Most important, perhaps, is the matter of timing. The DOJ settlement permitted petitioner to pay his 2000–2011 tax liabilities in regular monthly installments, with the last payment not due until July 2027. As of May 1, 2025, when Appeals upheld the levy, petitioner's monthly payments had reduced his remaining balance for 2000–2011 to $948,000. By sustaining a levy for $1,101,788, the SO would have

[*12] allowed the IRS to collect petitioner's entire remaining balance for those years (and then some) immediately, whereas the DOJ settlement entitled him to pay that balance in installments over the ensuing 27 months. By permitting acceleration of the payments in this way, the SO's determination was fundamentally inconsistent with the DOJ settlement and with petitioner's contract rights thereunder. It was therefore an abuse of discretion.

Echoing the SO, respondent urges that "the RBAs are separate and distinct from [petitioner's] civil tax liability." Petitioner assertedly "faced two separate and distinct liabilities, both of which are enforceable by the Service: (1) personal income tax liabilities arising out of a civil examination and (2) RBAs arising out of a criminal prosecution." (In fact there was no civil examination; the IRS simply assessed the tax reported by petitioner on his 2000–2011 returns.) The settlement of the collection suit, respondent says, "did not explicitly or implicitly include the RBAs. Only the civil tax liabilities were . . . reduced to judgment and resolved."

We are not persuaded. The restitution ordered by the sentencing court, $1.2 million, was identical in amount, as of February 2017, to petitioner's unpaid tax liabilities for 2000–2011, as calculated by the attorneys in the criminal case and accepted by the court. The RBAs were concededly "distinct" from the assessments the IRS made when receiving petitioner's 2000–2011 tax returns: The two sets of assessments were made at different times using different procedures. But the RBAs were not *separate from* petitioner's personal income tax liabilities for 2000–2011. They were *identical to* his personal income tax liabilities for those years, and they simply afforded the IRS a distinct mechanism for collecting those liabilities. The character of the RBAs as a collection mechanism is evident from the fact that any payment petitioner made against the RBAs would be *credited toward* his personal income tax liabilities for 2000–2011.

What makes this case different from previous cases we have considered under section 6201(a)(4) is that, six years after the IRS made the RBAs, petitioner and the Government agreed to a *different collection mechanism* for his 2000–2011 tax liabilities, effected by the settlement of the collection suit. The United States thereby accepted $1.6 million as a compromise of petitioner's aggregate 2000–2011 income tax liability and gave him the right to pay that liability in monthly installments ending in July 2027. By sustaining in May 2025 a levy issued to collect

**[*13]** petitioner's entire outstanding balance immediately, the SO acted in contravention of the contract DOJ and petitioner had executed.

We thus conclude that the SO abused his discretion in upholding the proposed levy. At the very least, he failed to consider "whether [the] proposed collection action balances the need for the efficient collection of taxes with the legitimate concern of [petitioner] that any collection action be no more intrusive than necessary." § 6330(c)(3). Because the United States had agreed to a payment plan extending to July 2027, the immediate collection action sanctioned by the SO was "more intrusive than necessary."

For these reasons, we will deny respondent's Motion for Summary Judgment. Deeming petitioner's opposition to that Motion a Cross-Motion for Summary Judgment, we will grant the Cross-Motion and enter decision declining to sustain the collection action. We have considered all the parties' contentions and arguments that are not discussed herein, and we find them unnecessary to reach, without merit, or irrelevant.

To reflect the foregoing,

*Decision will be entered for petitioner.*